MECHANICS' NATIONAL BANK OF PROVIDENCE and Others, Respond-
ents, v. EDWARD A. JONES and ALLAN N. MACNABB, Defend-
ants, Impleaded with DAVID ROUGHEAD and EMMA MEADE
JONES, Appellants.

*Specific performance — of an agreement between debtors and their creditors — when,
as to the wife of one of the debtors who has become possessed of certain assets, it is
supported by a sufficient consideration — effect of a levy under an execution by one
of the creditors in violation thereof — deposit in escrow without consideration, up
to what time it is revocable.*

Edward A. Jones, who, with David Roughead, was engaged in carrying on a
copartnership business under the name of the Excelsior Machine Company,
obtained large loans in the firm name under circumstances constituting larceny
and invested a portion of the money so obtained in property, the title to
which he took in his own name. Subsequently he married and, pursuant
to an ante-nuptial agreement which he had made with his wife, transferred
to her property, which he had thus unlawfully obtained, amounting in value
to $50,000. Thereafter he informed Roughead of his wrongdoing and executed
to Roughead a conveyance of all his interest in the partnership property. A
meeting of the creditors and Mr. and Mrs. Jones and Roughead was thereupon
held and an agreement was entered into between them which provided, in
brief, that a corporation should be formed to carry on the copartnership busi-

ness; that Mrs. Jones and Roughead should transfer to the corporation the property which they held; that they should receive therefor the capital stock, and that bonds of the corporation should be given to the creditors for the amount of their respective claims.

In reliance upon the agreement, the creditors made no further attempt to enforce collection of their claims by legal proceedings and devoted considerable time and money to an attempt to carry out the agreement.

*Held,* that the advantages obtained by Mrs. Jones under the agreement and the action taken by the creditors in reliance thereon constituted a consideration sufficient to support the agreement as to Mrs. Jones;

That the fact that, after the execution of the agreement, the sheriff attempted to make a levy under an execution issued upon a judgment obtained by one of the creditors did not entitle Roughead or Mrs. Jones to repudiate the agreement, it appearing that the sheriff's action was in disobedience of his instructions and the result of inadvertence and confusion and that no injury resulted to Roughead or to Mrs. Jones therefrom.

When a deposit is made in escrow, the escrow agent becomes the trustee of the party making the deposit and of the one for whose benefit it is made. If the deposit is made under and upon conditions to be fulfilled by another and without original consideration, the person making the deposit may revoke his proposition at any time before the opposite party has complied with such conditions. Upon the other hand, when the opposite party has complied with the conditions, he becomes entitled to receive the property deposited for his benefit.

APPEAL by the defendants, David Roughead and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 14th day of April, 1902, upon the report of a referee, in and by which judgment it was in effect provided that defendants be required to do and perform certain acts necessary to carry into operation an alleged agreement made between the plaintiffs and the defendants, other than MacNabb, for the settlement of a large amount of indebtedness held by plaintiffs against the defendants Edward A. Jones and David Roughead, and also that plaintiffs recover of the defendants, other than said MacNabb, the sum of $714.94, costs and disbursements.

*Eugene M. Bartlett* and *William H. Baker,* for the appellants.

*William L. Marcy* and *Adelbert Moot,* for the respondents.

HISCOCK, J.:

This action was brought to secure, in effect, specific performance of an alleged agreement made by the defendants, other than MacNabb, for the settlement of a large amount of indebtedness held

by plaintiffs against the defendants Edward A. Jones and David Roughead, and to that end and as a substantial feature of such agreement to compel the delivery by the defendant MacNabb, who held the same in escrow from the defendants Roughead and Emma M. Jones, of various deeds and transfers of property to a corporation organized by and in behalf of the plaintiffs and the appellants, other than MacNabb, and, concurrent with which, said corporation was to deliver bonds, secured by a mortgage upon the property conveyed to it by the transfers held by said MacNabb in escrow, in the amount of indebtedness held by the plaintiffs respectively against said defendants Jones and Roughead, said creditors, coincidently with the delivery of said bonds to them, giving up and surrendering their notes or other evidences of debt.

The judgment appealed from awarded to plaintiffs substantially the relief asked above.

It is urged upon this appeal, as it was upon the trial below, that there are various reasons why said judgment should not have been awarded. The main reasons advanced in substance were and are that no such definite agreement of settlement was reached as to permit of an action for specific performance; also, that there was not sufficient consideration moving to the defendants, and especially the defendant Emma M. Jones, to furnish the basis for compulsory enforcement thereof; also, that, within the legal privileges possessed by them so to do, the defendants Roughead and Emma M. Jones revoked their consent for the delivery by the defendant MacNabb of the various transfers which had been placed in his hands in escrow and terminated the arrangement under which he held the same; also, that the plaintiffs lost their right to have the alleged agreement of settlement carried out through the violation by one of their number of its obligations through issuing an execution against the property of Jones and Roughead while negotiations were pending.

We think that the evidence was sufficient in behalf of plaintiffs to authorize and sustain the judgment, and that the same should be affirmed.

For some time prior to November 23, 1901, the defendants Edward A. Jones and David Roughead were engaged as copartners under the name of Excelsior Machine Company in carrying on a manufacturing business in or near the city of Buffalo. Roughead

was the practical manufacturing man of the copartnership, and Jones had charge of the finances. The latter was concededly dishonest in his business operations. Without the knowledge of his copartner, as it is claimed, he employed copartnership funds for personal speculation and took in his own name the title to a large amount of property purchased therewith. He secured the funds with which to conduct these illegal operations and to keep the copartnership business running by large loans, which were obtained in the firm name upon false representations, and which were obtained in large part, at least, from the plaintiffs in this action, under such circumstances as concededly constituted larceny. While these operations were going on, and in the summer of 1901, as it is alleged in behalf of the appellants, he met the defendant now Emma M. Jones and became engaged in marriage to her, with an attendant ante-nuptial agreement which provided for the transfer by him to her of property standing in his name and purchased by him as aforesaid with copartnership funds which, it must be assumed, were obtained in whole or part from the plaintiffs, of the value of upwards of $50,000. Subsequently the marriage took place and the property was transferred in accordance with said alleged agreement. Apparently the financial affairs of the copartnership during this same time were reaching such desperate straits that Jones concluded he could not any longer, even by criminal methods, keep the same afloat. He acquainted his copartner Roughead with what he had been doing, and during the summer or early fall of 1901 made to him a transfer of all of his interest in the copartnership plant and property. Although Roughead lived with Jones in addition to being his copartner, this information, it is strenuously urged in his behalf, was the first intimation which he had of the condition of the firm's financial affairs. At this time Jones had succeeded in extracting from the plaintiffs, under the firm name by the devices aforesaid, the sum of upwards of $125,000 in discounts.

As the result of these facts and conditions, a meeting of the plaintiff creditors was called for November 23, 1901, at the office of the counsel for appellants in the city of Buffalo. It was largely attended by them, and the members of the debtor copartnership and Mrs. Jones were also present, or represented by counsel. There seems to have been a pretty thorough discussion of the situation, attended

with considerable bitterness upon the part of plaintiffs over the situation into which they had been led, as before stated. A committee of creditors was appointed, which held further consultations with the debtors and Mrs. Jones and their counsel, resulting in a proposed plan for the settlement of the indebtedness held by plaintiffs. This plan was submitted by the committee of creditors to their principals in a letter prepared on or about December third, and dated November 27, 1901. The general outline of this proposed plan, as set forth, was as follows: A corporation was to be organized for the purpose of continuing and carrying on the business of Jones & Roughead with a capital stock of $250,000; Mrs. Jones and Roughead were to convey to this corporation the property which they held as hereinbefore stated, and were to receive therefor the capital stock. Seventy-five per cent of this capital stock, however, was to be held in trust for the purpose of securing the control of the corporation in the management of its business, etc. The trustees of said corporation were to be three in number, one of whom was to be selected by the creditors, and the other two to be Roughead and Mrs. Jones. This corporation was to issue bonds secured by a mortgage upon the property conveyed to it as aforesaid, and which bonds were to be to the amount of and used for the purpose of retiring the indebtedness held by the creditors. Said bonds were to be payable in ten annual installments. Further proposed provisions were also submitted as to the details of the management of the corporation, which it is not necessary here to recapitulate at length. The copartners and Mrs. Jones approved and assented to this plan, and the creditors to whom it was submitted, as aforesaid, were requested forthwith in writing to signify their approval thereof if in fact it was approved. All of them, except four, signified their approval. It is evident that the objection of the latter thereto was wholly or largely based upon the fact that the debtors, in the persons of Mrs. Jones and Roughead, were to have a majority of the directors of the proposed corporation, and the control incident to such majority. There were further negotiations between the appellants and their counsel, the committee of creditors and the objecting four creditors. The result thereof was that January 18, 1902, Roughead and Mr. and Mrs. Jones duly executed an agreement in writing, so modifying the original propo-

sition of November 27, 1901, that the board of directors of the proposed corporation was to be increased from three to five; Mr. Roughead and Mrs. Jones were to be two of these, the creditors at large were to select two, and one Jameson, who represented one of the creditor banks, was to be the fifth, the control of the corporation to this extent, therefore, being thus finally given to the creditors instead of to the debtors.   Said supplementary instrument also named the person who was to act as trustee in the mortgage securing the bonds to be issued as aforesaid and who was to hold in trust the capital stock as above stated.   It also reaffirmed the conditions of the original plan of November 27, 1901, except as modified, and contained some additional provisions with reference to the employment of bookkeepers, the keeping of books, etc.   Three of the four creditors who had theretofore refused to accept the plan of settlement were represented at the conference at which this instrument was executed and immediately signified their acceptance of the plan as finally modified.   It seems to have been agreed by those present at this conference, including both sides of this controversy, that it was not necessary to secure new consents from the creditors who had accepted the original proposition, because the modification then made was in their favor and to their advantage.   The German Bank of Buffalo was the remaining one of the four creditors from whom acceptance had not theretofore been obtained.   Said bank was the liquidating agent of the Metropolitan Bank formerly of Buffalo and held its claim as representative and assignee of said Metropolitan Bank.   Owing to the double and divided representation of this claim there seems to have been more or less confusion and uncertainty about it throughout these negotiations.   Prior to January 25, 1902, however, an authoritative verbal assurance was given that consent in behalf of said claim would be given to the plan as finally modified, and on or about noon of said last-mentioned date a written instrument to that effect was delivered to the committee of the creditors.   Coincident with the execution of the instrument of January eighteenth, above mentioned, by Mr. and Mrs. Jones and Roughead instruments and transfers were executed to carry out the plan of settlement.   These consisted, among others, of a certificate of incorporation of the proposed new corporation, under the name of Excelsior Machine Company, exe-

cuted by Emma M. Jones and Roughead, and by the representatives of three of the creditors and various instruments of conveyance and transfer of real and personal property to said corporation executed by Mrs. Jones and Roughead. By agreement of the parties these transfers were placed in escrow in the hands of the defendant MacNabb under an agreement, evidenced by his written receipt and acknowledgment, whereby it was amongst other things provided that said instruments were to be held by said trustee for the space of two weeks from the date thereof; that, if within said term, all of the creditors hereinbefore referred to, excepting therefrom two, formally assented to the plan of settlement, as carried down to that time, and surrendered to Jones and Roughead the notes and other evidences of debt held against the latter, said instruments were to be delivered to the board of directors of said corporation, and coincidently with such surrender, said corporation was to execute and deliver to the mortgage trustee theretofore agreed upon the mortgage and bonds outlined in the agreement between the creditors and Roughead and Jones.

Prior to this time the Metropolitan-German Bank claim hereinbefore referred to had been put in suit and judgment and an execution thereon delivered to the sheriff of Erie county. Such delivery of said execution was accompanied with instructions to the sheriff in substance not to do anything thereupon, and for some time nothing was done. On or about January twentieth or twenty-first, however, a deputy sheriff did go to the factory of the former copartnership and make a very informal and probably inadequate purported levy under said execution. He did not take any actual possession of the property and in fact seems to have done nothing more than walk into the factory, come away again and make an indorsement upon his execution. The referee has distinctly found, as we think upon sufficient evidence, that no harm was caused by these steps. What was done was in violation of instructions given to the sheriff when the execution was issued and the result of confusion and inadvertence. Subsequently, and upon January twenty-seventh, said bank withdrew said execution and executed a satisfaction of its judgment.

About five o'clock upon the afternoon of January twenty-fifth, Mr. and Mrs. Jones and Roughead served upon the chairman of the

committee of creditors and also upon MacNabb, the trustee in the escrow agreement, a notice in effect withdrawing all proposals and propositions by them made and terminating the agreements and negotiations hereinbefore referred to. Although the two weeks allowed under the escrow agreement had not expired at the time when this notice was served, all of the creditors acting in response to the plan of settlement as originally proposed or as modified by the instrument of January eighteenth, had accepted the same and all of them had forwarded to the representative of the creditors at Buffalo their notes and evidences of debt for surrender to Jones and Roughead as provided in said escrow agreement, with the exception of two or three whose notes on or before said date were placed in the United States mail for delivery to the representative of the creditors in Buffalo for that purpose, and with the exception of the German Bank which had assented to the plan but whose notes had not been secured because at the moment inaccessible in its vault.

Upon forwarding to Albany the certificate of incorporation prepared it was learned that the name of "Excelsior Machine Company" adopted, had already been so taken by some other corporation as not to be available, and there was a general consent by or in behalf of all parties interested that the name should be changed to "Buffalo Excelsior Machine Company."

Mr. Sprague, the chairman of the creditors' committee, had spent some time in preparing a purported draft of the mortgage and by-laws to be executed and adopted by the corporation. He had communicated with the counsel of the appellants with reference to the same, but through absence of the latter or other cause they had not been actually submitted to such counsel for examination.

There was little conflict in the evidence as to the foregoing facts, and the important ones were expressly found by the referee. Upon them and certain others, hereafter to be referred to in more detail, are presented various questions through the defenses which are earnestly and elaborately urged by appellants' counsel to plaintiff's right to recover.

Passing for the moment the contention that no agreement was ever reached between the litigating parties of sufficient completeness and definiteness to allow the courts to enforce specific performance thereof, and assuming at this point that said contention is not well

founded, we shall take up the discussion of the other questions which seem to require consideration.

It was, of course, a fundamental feature of the negotiations and agreement between the plaintiffs and appellants that none of the former should seek to enforce collection of its claims by hostile proceedings. It is insisted that there was such a levy under the execution issued upon the judgment recovered by the German Bank of Buffalo as violated the rights of appellants and entitled them to discontinue and cancel all negotiations and agreements. Their notice, served upon January twenty-fifth, terminating all negotiations and agreements, was founded upon the act in question, and the same has already been referred to. We do not think that it furnished a sufficient or valid reason for withdrawal and termination by defendants of their engagements. The attorney for the bank explicitly instructed the sheriff not to make a levy. When he found that, in violation of these instructions, a deputy had gone out to the factory to make a levy he ordered him away, simply saying that as long he was there he might as well make an indorsement upon his execution. We do not believe that any valid levy was made, and it seems to be clear that what was done in that direction was in disobedience of orders and the result of inadvertence and confusion. We do not see or believe that the slightest injury resulted to appellants from the acts in question. Long before this day it had become pretty thoroughly advertised through the proceedings set forth in this record that the defendants, through the criminal proceedings of one of them, had secured large loans which the firm could not pay, and the compromise and adjustment of which in some way was necessary to secure the continuation of business. Suits had been brought and judgments recovered, and it is not possible, in our opinion, that the act of the sheriff complained of occasioned any additional injury to the standing or position of the firm or furnished any equitable ground for revocation by appellants of the acts by them up to that time done in the way of settlement.

Of course the really material interest involved in this litigation and appeal is whether the defendant Emma M. Jones is to part with the property deeded to her by her husband and transfers of which to the proposed corporation she placed in escrow January eighteenth. It is insisted by the appellants that there was no agreement between

the parties hereto founded upon any adequate consideration which covered and included the deposit by said appellant and her co-defendant Roughead of their conveyances with the escrow agent, MacNabb ; that, therefore, independent of any violation by the plaintiffs of their obligations, said defendants were entitled to cancel and terminate the deposit in escrow of said transfers at any time before acceptance and compliance by plaintiffs of and with the conditions which attended such deposit. We, therefore, next pass to the consideration of these issues, upon which we are unable to reach conclusions, in accordance with the contentions of appellants.

Before the meeting of plaintiff creditors was called in November none of the defendants Jones and Roughead was free from interest in the conditions which surrounded or confronted them. Edward A. Jones had been guilty of such fraud in procuring loans in behalf of the copartnership from the plaintiffs as beyond any question subjected him to liability in actions of tort with the usual incidents of civil arrest. The other copartner, Mr. Roughead, held property which undeniably was subject to the claims of the plaintiffs, and unless those claims could in some manner be adjusted, destruction of the copartnership business in which he was interested and bankruptcy for himself were inevitable. Mrs. Jones was in the record possession of certain property from her husband. It is asserted that her ownership thereof was based upon the good and valid consideration of her engagement to marry. Upon the other hand, the property which she had thus obtained was purchased with copartnership funds and originally was subject to the payment of plaintiffs' debts. Its transfer away from them to her under the circumstances in this case was at least an equitable fraud by her husband. Litigation thereover was to say the least a possibility not beyond the bounds of reasonable contemplation.

Under such circumstances, by and in behalf of said persons, plaintiffs were invited to come to Buffalo to confer upon the situation. As the result of such a conference the plan was proposed which, it is true, called upon the defendants to surrender property which possibly the defendant Emma M. Jones might have been able to hold. But as a condition and consideration of such surrender immunity from prosecution was secured, the business in which appellants were directly or indirectly interested was to be preserved,

and they were to obtain all of the capital stock of the corporation which it was doubtless hoped and expected would be successful under the proposed plan. Coming only down to this point, it is difficult to see that appellants were not securing advantages and gains under the agreement proposed. But there is another feature which demands consideration. It is too elementary and well settled to require discussion that a party may be held upon his promise not only by reason of a consideration passing to him therefor, but also by the fact that the opposite party, in reliance upon such promise and agreement, has so done or omitted to do things that he would suffer and be injured if the promise was withdrawn or canceled. Immediately upon the issue of appellants' proposition, as contained in the circular letter of November twenty-seventh, all of the plaintiffs except four signified their acceptance thereof. From that time to the date of service by appellants of their notice of revocation, plaintiffs, with an expenditure of considerable time and money continued to negotiate with appellants for the completion and carrying out of the proposed agreement. The remaining four plaintiffs came into the arrangement. During all of this time, with the exception of the German Bank's purported levy already referred to, the plaintiffs refrained from taking any steps or proceedings upon their claims against appellants, and this was done, as the referee has found upon sufficient evidence, upon the promise and agreement of the appellants.

Under all of these circumstances we do not think it can be said, as argued by the appellants' counsel, that there was no consideration underlying and upholding defendants' promises and agreements and that they had the right to terminate and cancel the same at any time. Under the views which we have expressed upon this point, the escrow agreement and deposit were simply a part and in performance of the general agreement between the parties. The escrow receipt was an advantage to appellants in that it limited the time for performance by plaintiffs of their part of the agreement to two weeks. Independent of such limitation, the plaintiffs would doubtless have had a reasonable time in which to comply with the terms of appellants' offer and agreement.

If, however, we are wrong in our conclusion that the deposit by appellants in escrow of their transfers was in performance of and

accordance with a valid and binding agreement and arrangement between plaintiffs and defendants, and such deposit is to be regarded rather as a transaction by itself simply in the light of what had taken place between the parties, we still think that appellants did not have the right to revoke and terminate the same as they attempted to. We do not understand that there is serious dispute over some of the general principles which govern a deposit of documents in escrow such as was made in this case. From the time the deposit is made the escrow agent becomes the trustee of both the party making the same and of the one for whose benefit it is made. If the deposit is made under and upon conditions to be fulfilled by another and without original consideration, it is doubtless true that the person making the same may revoke his proposition at any time before the opposite party has complied with the conditions to be by him performed. Upon the other hand, when such opposite party has complied with the conditions and obligations under which the deposit was made, he becomes entitled to the property deposited for his benefit. We think that, under these principles, even if defendants originally had the right to revoke the escrow agreement and withdraw their instruments of transfer, the plaintiffs had complied with the conditions by them to be performed prior to the service of the notice of January twenty-fifth and that their rights had thereby become fixed. The substance of the agreement covering the escrow deposit by appellants was that within two weeks from its date, January eighteenth, plaintiffs were to formally agree to the general plan of adjustment which had been formulated and also within the same time deliver to Jones and Roughead all of their notes and evidences of debt, this last act, however, being conditioned upon the concurrent delivery by the corporation organized of the mortgage bonds which it was to issue to take up and replace plaintiffs' indebtedness. It seems to have been the understanding between the parties that the modifications of the original plan of settlement made upon January eighteenth did not necessitate securing new consents by those of the plaintiffs who had already signified their acceptance of the original plan. The modifications of January eighteenth were in favor of the plaintiffs; none of them have ever objected thereto, and we think, especially in the light of what took place between the

parties, that it was not necessary to secure new consents from such of plaintiffs as had already consented. Three of the four plaintiffs who had not theretofore done so, signified their acceptance of defendants' proposition at the time the transfers were deposited, and the formal consent of the remaining one had been secured upon January twenty-fifth, before notice of withdrawal was served by defendants. In accordance with the arrangement which had been approved by defendants, these consents were delivered to Mr. Sprague, who was chairman of the creditors' committee. It must be assumed upon the evidence that defendants were from time to time informed of the execution and delivery of these consents, except, possibly, in the case of the German Bank, and it was the understanding that plaintiffs' counsel or Mr. Sprague was to secure such consent in accordance with an informal verbal agreement that had theretofore been made. Likewise all of the notes which were to be delivered by plaintiffs had been delivered to the creditors' committee for surrender upon the morning of January twenty-fifth, except those of three or four creditors whose notes were in the mail in transit for such delivery upon said day. The escrow trustee, MacNabb, had notice and knowledge of these facts, both as a member of the creditors' committee and through his presence in the office of the chairman of said committee, upon the morning of the day in question when the notes and obligations as delivered and called for were checked up. Thus, although three days remained under the terms of the escrow agreement for performance by plaintiffs of the conditions thereunder imposed upon them, they had already, so far as possible, discharged the burden of performance which rested upon them. Their consents had been delivered to the appointed agent. Their notes had been delivered or were in the mail in transit for delivery as provided. Nothing remained to be done but delivery of the transfers to the new corporation and delivery by the latter of the mortgage bonds with which to replace plaintiffs' debts. The performance of these steps cannot be said to have rested upon plaintiffs, but they were to be performed by the trustee and by the corporation of which appellants were a part, before anything further was to be done by the creditors.

We think, therefore, that there was such a compliance by the plaintiffs with the conditions under which appellants' transfers were

deposited, as gave the former vested and enforcible rights in such transfers and prevented appellants from withdrawing the same.

We come finally to the remaining and more complicated question raised by the contention of appellants, that the minds of the parties never met in an agreement sufficiently definite and complete to form the basis of this action for specific performance, and to compel the delivery of appellants' transfers and assignments as part performance thereof.

In support of this it is urged in the first place that the letter issued by the creditors' committee under date of November 27, 1901, was a mere informal and tentative suggestion of a plan of settlement of the difficulties in which the parties found themselves and which, if received with favor, was thereafter to be followed by a formal and original agreement. And in the second place, it is said that, if this last proposition is unsustained, still many details were left incomplete and never fixed and defined up to the time when this action was brought.

We disagree with this contention in both of its branches.

Appellants' counsel has referred to the circumstances which attended the issuing of this letter of November twenty-seventh, and to many phrases used therein tending to support, as claimed, his position. It is impossible within reasonable limits to take up and review all of these circumstances and expressions. We think that a consideration of the entire instrument, sent out as it was with the approval and concurrence of the appellants, duly manifested by their written instrument, justifies the conclusion that it was a proposition in their behalf of settlement, which, when accepted by their creditors, ripened into an agreement setting forth the general features of a plan of adjustment, although still leaving various minor features to be settled.

In considering the second branch of appellants' contention, that no completed agreement was ever reached, we are to test its correctness by the facts as they existed when appellants' transfers were delivered upon January 18, 1902. It may be conceded, for the sake of argument, that if the efforts and negotiations of the parties had ceased with the issue of the letter of November twenty-seventh, there would not have been a sufficiently completed agreement to sustain this action. But after that the creditors, through a com-

mittee of their number, and the appellants seem to have steadily maintained negotiations for perfecting the details of the plan of adjustment of indebtedness.     We think that when appellants deposited their transfers with MacNabb upon the evening of January eighteenth this was done in pursuance of or as part of an agreement which at that time had been perfected in all of its essential details.

Here again it is impossible to follow and comment at length upon all of the steps and negotiations of the parties.  It is perfectly apparent that the one feature of the plan of adjustment, which in the minds of the parties overshadowed all others in importance, was the organization of the corporation which was to act as the medium of carrying out the agreements of the parties.  Practically all of the essential features of the settlement of the indebtedness between the parties were to be performed by means of this corporation.  And in reference to the latter again, the delicate question over which the parties much contended was as to the organization of its board of directors, each side being sensitive as to its representation therein. Finally this was agreed upon, and a certificate of incorporation duly executed at the same time with appellants' transfers, which fixed the name of corporation, the amount of its capital stock, the personnel of its board of directors, etc.  This certificate, as stated, was actually executed and thus disposed of, and actually fixed many of the details of the plan between the parties.  In addition to this, the parties, by their various written instruments, had agreed upon many details of the conduct of its business by said corporation which might properly be the subject of by-laws which were to be executed by and for it. Thus we find specific and most explicit arrangements as to the signing of checks, as to the methods of keeping its books, as to the duties to be discharged by the two former copartners, Roughead and Jones, and as to other matters.  Provision was also made for the disposition of the capital stock to be issued, and which, as hereinbefore stated, was to be the compensation to Mrs. Jones and Roughead for the property transferred by them to said corporation.

But especial stress is laid upon the fact that the instrument of November twenty-seventh contained the statement that a number of carefully prepared provisions were to be incorporated into the agreements to safeguard and protect the interests of the creditors, and that sufficiently definite agreements were not reached between

the parties as to the form of the bonds and mortgage securing the same, which were to be issued by the new corporation.

So far as the first criticism is concerned, it might be answered that the carefully prepared provisions referred to were to safeguard and protect the interests of the creditors, and no creditors are complaining at the absence of such provisions; but, as we have already suggested, we think that the demand for these provisions was fully met by the agreements reached between the parties prior to January eighteenth, and that, especially when the parties agreed upon the directors who were to have control of the corporation and its management, they obviated any necessity for further provisions in this respect.

When we turn to the consideration of the bonds and mortgage to be executed, we find that most of their details were absolutely and definitely fixed. They were to be executed by the new corporation. The mortgage trustee had been duly designated and agreed upon. The property to be covered by the mortgage was ascertained and fixed. The amount of the bonds was fixed by a reference to debts set forth and referred to in the original proposition of November twenty-seventh, and which were to be retired by the bonds. The terms of payment and the rate of interest were all fixed. It is suggested that the place of payment had not been designated, but in the absence of such designation we think that the general practice and the rules of law applicable to the payment of obligations would obviate any difficulty. Provision was made for the whole amount of the bonds becoming due in case the installment in any year was not paid. It is true that provisions for insurance, payment of taxes, funding of rents, payment of interest and current caring charges upon incumbered properties, and for the sale or exchange thereof by the mortgage trustee, for the release of the capital stock held by the mortgage trustee, and against undue expenditures for betterments or improvements pending the term of liquidation were somewhat general.

We think that this, if not necessary, was at least proper and did not destroy the completeness of the agreement between the parties for the purposes of this action. Under the practice and the principles of law applicable thereto, the form of a corporation mortgage and bonds and of the provisions usually and ordinarily inserted

therein, like those for the payment of taxes and insurance, would be well understood and readily formulated. We think that the parties contemplated that the exact details of these subjects should be left to the decision of the board of directors of the corporation which they agreed upon. It was, in our judgment, essential that this should be done. Assuming that an agreement might have been made by the parties which would compel the directors of the corporation, after they had been selected, to place a certain amount of insurance upon the property, or agree not to exceed the expenditure of a certain amount in the course of ten years for betterments or improvements, we think it would have been impossible to formulate such an agreement. Those were matters to be determined by conditions as they existed from time to time and to be settled by the board of directors as presented. Substantially, all that could be done by the parties was to make general provision, as they did, for the insertion in the mortgage or by-laws of clauses covering these different topics in appropriate manner. It is urged that, in the absence of more specific agreement, the appellants have surrendered all voice in the preparation of the bonds and mortgage. But the answer to this suggestion again is that the same could not be executed and issued except upon the vote of a board of five directors, two of whom were the appellants and the third a man agreed upon by them.

Taking the view which we have expressed in regard to the facts of this case, the legal conclusion naturally follows that plaintiffs are entitled to the relief sought by them. The general principles which govern a court of equity in extending or withholding the relief of specific performance are neither intricate nor obscure. The difficulty in any instance must mainly arise in the application of well-understood and established principles to the facts of that particular case. If, upon the evidence presented to us upon this appeal, we had been convinced that important and essential provisions of an attempted or purported agreement between the parties had been left undetermined, the case would at once have come within those authorities cited in behalf of the appellants where specific performance has been denied. A court of equity cannot make contracts in behalf of parties which they intend to make for themselves, and it is very obvious that such a court cannot enforce specific perform-

ance of a contract which has never been completed and made. Upon the other hand, assuming as we have held that the parties to this controversy did reach an agreement upon the essential details of the matters involved between them, the court had an undoubted right to grant relief in the form of a decree for specific performance. The completeness of the agreement between the parties for the purposes of this action was not, in our opinion, impaired by the fact that the execution of some of its details was remitted to the corporation agreed upon by the parties as the medium for such purpose.

We think that the judgment entered upon the report of the referee is subject to criticism in one respect. Concurrent with the delivery by plaintiffs of their notes and evidences of debt to Messrs. Roughead and Jones, the corporation organized by the parties was to issue bonds for such indebtedness secured by a mortgage upon the property conveyed by the instruments in escrow. The agreement of the parties provided that such mortgage should contain certain clauses with reference to insurance, taxes, etc. The judgment entered provides simply that the bonds should be secured by a mortgage upon the property in question. We think these clauses should be so modified as to provide that the mortgage securing the bonds in question should contain the various clauses and conditions agreed upon by the parties.

As so modified the judgment should be affirmed, with costs.

McLENNAN, SPRING, WILLIAMS and DAVY, JJ., concurred.

Judgment modified and as modified affirmed, with costs. The form of the order and decision to be settled before Mr. Justice HISCOCK upon two days' notice.