Abraham E. Margtjlies, J.
At the conclusion of the trial, a decision was dictated into the record which was published in the New York Law Journal on January 16, 1974 (p. 21, col. 2). However, by reason of request for an opinion for publication, same was prepared.
This action was brought in the ¡Small Claims Part of the Civil Court of the City of New York to recover compensation for money deposited with the defendant pursuant to the terms of a mortgage agreement.
The facts are not in dispute. The plaintiffs are the mortgagors (described as owner in mortgage agreement) of a mortgage held by the defendant mortgagee. The mortgage agreement provides that the “ owner agrees to pay * * * on the first day of each succeeding month from the date hereof until the whole of the principal sum and the interest thereon shall be fully paid * * * The payments * * * may be applied by the mortgagee to the payment of interest or to the payment of taxes * * * affecting the premises * * * As security for the payment of all taxes * * * the owner shall deposit with the mortgagee an amount at least equivalent to one-twelfth (1/12) of the aggregate of such annual taxes and water rates, the amount * * * the money so deposited to be applied to the payment of such taxes and water rates as same shall become due and further agree to pay an annual charge of $2.00 for Tax ¡Service ”.
The plaintiffs complied with foregoing terms by payments when due of money demanded by the defendant. The defendant entered such payments in its records under captions of date payment received and how and when disbursed. The amount received was labeled escrow and after disbursements, the amount remaining was set forth after the words escrow balance.
The records indicate that the defendant paid the taxes when due and that the escrow balance varied from $12 to $592. On *285 several occasions, the plaintiff questioned the defendant as to how the money was kept and requested that the money be held as security to insure payment of taxes when due. In response, the plaintiffs were told that the money was kept in general funds and used by the defendant in its business for anticipated profit. A vice-president of the defendant testified to the same effect, namely that it was the practice of the bank to use the money on deposit in escrow accounts by making loans and enjoying a financial return.
It was the plaintiffs ’ theory that the de facto effect of the tax escrow arrangement, requiring the plaintiffs to pay in advance each month, was a loan of the money on deposit creating an obligation on the part of the defendant to compensate the plaintiffs for the use of their money at the legal rate of interest. In this connection, the plaintiffs referred to a number of cases: Bevier v. Covell (87 N. Y. 50), Boston Road Shopping Center v. Teachers Ins. & Annuity Assn. (13 A D 2d 106, affd. 11 N Y 2d 831), and Fleschner Bros. v. Consolidated Edison Co. (202 Misc. 617, revd. 279 App. Div. 69, affd. 304 N. Y. 815) where the rule of just compensation was approved.
The second point made by the plaintiffs is that by the breach by the defendant of its fiduciary duty owed to the plaintiffs in diverting the escrow to a private, unauthorized use through which it realized a profit, said defendant should be under an obligation in law to compensate the plaintiffs by reason of the breach of its fiduciary duty, and refers to the following cases: Meinhard v. Salmon (249 N. Y. 458), Matter of Avalon East v. Monaghan (43 Misc 2d 401), Mechanics’ Nat. Bank v. Jones (76 App. Div. 534, affd. 175 N. Y. 518), Farago v. Burke (262 N. Y. 229), Bardach v. Chain Bakers (265 App. Div. 24, affd. 290 N. Y. 813).
The points raised by the defendant are as follows:
First, that in absence of a statute or an agreement, there is no obligation on the part of the defendant to pay interest for the money deposited as security, and refers to the case of the New York State Thruway Auth. v. Hurd (25 N Y 2d 150).
Two: That the defendant did not breach the fiduciary relationship with the plaintiffs.
Three: That the moneys deposited in the escrow account and the use thereof by the defendant did not make the loan usurious.
The defendant is a savings and loan association. The laws of the State of New York provide for its formation, by-laws, powers and supervision as set forth in the Banking Law since 1914 and as amended to 1970. A savings and loan association *286 may lend its funds to borrowers secured by mortgages on real estate and require monthly payments of principal and interest in amounts sufficient to pay all interest and effect full repayment of principal within, the term of the mortgage, and, in addition, shall include a sum equal to one twelfth of the yearly real estate taxes.
Powers of savings and loan associations and restrictions upon them are set forth in the Banking Law but the language and the terms of the mortgage agreement are not specifically set forth. Lending institutions have included in mortgage agreements clauses that they deem advisable to the extent not prohibited by the Banking Law. In this case, the defendant mortgagee added “water rates, and a charge for tax service ” to the provisions of the said Banking Law.
Therefore, the silence of the Banking Law is not determinative of the plaintiffs’ right to compensation for its use of the plaintiffs’ money. The holding in the case cited by the defendant New York State Thruway Auth. v. Hurd (25 N Y 2d 150, supra) was to the effect that the obligation to pay interest must be expressed or implied, in fact. Thus, to the extent that common-law rules are relevant in ascertaining whether interest accrued or could accrue on a debt, it must ¡be presumed, in the absence of express or implied provisions for interest, that interest was not contemplated.
However, it should be noted that in New York State Thruway Auth. v. Hurd (supra, pp. 157-158) Judge ¡Breitel, who wrote the opinion, referred to two earlier cases and after stating the rule said: “ On the other hand, in Woerz v. Schumacher (161 N. Y. 530, 534; emphasis in original), it was said: 1 It is quite true that the general rule with respect to interest is that it can be allowed only by virtue of some contract, express or implied, or by virtue of some statute, or on account of the default of a party liable to pay when it is allowed as damages for the default. This, no doubt, is the general rule both in law and equity. ’ ’ ’
" The court wisely added, however: ‘ But this rule, like almost every other general rule, is not without some exceptions; and even within the limits of the rule who can outline with perfect accuracy the various contracts and obligations not providing for interest in express terms, but where the right to interest is to be implied? ’ (161 N. Y., at page 534)
“ Thus, in Rodgers v. Clement (162 N. Y. 422, 425-426), it was said in reference to advances to a commercial firm that ‘ the general rule is to allow interest upon the advances, although there was no express agreement by the firm to pay it, in the *287 absence of some agreement to the contrary, express or. implied. ’ This was not so much a contradiction of the Woerz case (supra) as a recognition that the commercial context of the transaction might supply the necessary implication of interest. ’ ’
This thinking could be applied to any commercial transaction including those regulated by the Banking Law and General Obligations Law. In my judgment, this would include a loan secured by a mortgage.
The acts of the defendant, as established by the evidence, indicate that the money deposited by the plaintiffs was security to insure the payment of taxes and water rates when due. The word “security” has a meaning as set forth in Webster’s New World Dictionary, 1970, on page 1288, as follows: “ The state of being or feeling .secure: freedom from fear, anxiety, danger, doubt etc.: state or sense of safety or certainty to, something that gives .or assures safety, tranquillity, certainty, etc. — something given as a pledge of repayment, fulfillment of a promise, etc.: guarantee — .surety.”
To express the intent of the parties when money is so deposited with the defendant, the court must look to the history of money given to a financial institution for the many purposes permitted by law. Concerned with the repayment or the use of this money, as provided for by statute, and by reason of the experience over the years of financial institutions failing to meet its responsibility in the repayment of1 the money by Federal enactment, banking laws were established to .guarantee by reason of insurance the repayment of the money in the event that the lending institution was in default. As a practical matter, the cost of such insurance although paid for by the lending institution would have been an amount that actually was paid for by the depositor.
With this kind of background, a person depositing money with a lending institution, which is acting as a mortgagor, as in this instance, can properly look to the definition of' the word “security” as defined in Webster’s New World Dictionary (supra) to the effect that this money would be placed where it would be secure in every sense against loss and would be available for the use that the mortgage agreement provided.
The moneys deposited by the plaintiffs with the defendant were commingled .with the general funds of the defendant, and no similar insurance guaranteeing its repayment or its contemplated use is provided in the .situation at hand.
There can be no doubt that the money deposited was a trust arrangement. Not only the word “ security” as used in the *288 mortgage agreement but in the records kept and maintained by the defendant clearly labeled the money deposited as money held in escrow. As Chief Judge Cakdozo stated in Meinhard v. Salmon (249 N. Y. 458, supra) in the words, as follows: “ many forms of conduct permissible in a workaday world for those acting at arm’s length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate.”
The word “ escrow” has a legal meaning which is defined in many places. Without stating all of the definitions throughout, can be found the requirement that the money be kept by a stranger or a third party or at the very least completely segregated and not commingled.
Quite clearly, the defendant did breach its fiduciary relationship with the plaintiffs.
The third point raised by the defendant as to whether or not the loan was usurious by the unauthorized use of the money is not before the court for determination. However, the effect of usury is set forth in section 380-e of the Banking Law. Simply stated, the taking of interest at a rate higher than that authorized by law shall extinguish the debt and, in addition, the mortgagor may recover twice the amount of interest paid. As to what constitutes usury may be generally found as set forth in the General Obligations Law.
By reason of the publication of the decision which contained some reference to recent activity in the Legislatures and governmental agencies of several States, and the publicity concerning the decision, there seems to be some misunderstanding as to the holding by the court. - The court did not attempt to establish a new rule of law but rather to determine under the existing laws, as to whether or not the plaintiffs on the evidence in the case before the court, were entitled to recover. The court by its decision found in favor of the plaintiffs.
The legislative enactment in the State of Connecticut, where escrow accounts draw interest, concerns itself with situations other than those before the court in this case. A 1974 law in the State of Massachusetts requires that lenders who profit by investment of escrow moneys must pay interest. The Massachusetts law is based upon facts established at the trial.
The court understands that in the legislative councils of1 the States of Oregon, Minnesota, North Carolina, Michigan, Cali *289 fornia, Virginia and New York, similar legislation is expected to be introduced this year.
Quite recently, Governor Wilson of the State of New York has indicated that he would expect the New York ¡State Legislature to have for its consideration such a ¡bill. An excellent brief review of the present situation with respect to an accounting of profits of money held by financial institutions in escrow appeared in The New York Times on December 27, 1973 in an article by Robert. J. Cole, under Personal Finance. This matter ■ was also reviewed in Consumer Reports, March, 1973, in an article “Homeowners v. Lenders, A Question of Interest Undoubtedly, there are other publications with respect to the general .situation. However, as the court pointed out earlier, the question as it concerns consumers requires legislative consideration and enactment.
In one of the few cases in point, and which is worthy of note, is Carpenter v. Suffolk Franklin Sav. Bank (291 N. E. 2d 609, 614) which was decided in the Supreme Judicial Court of the State of Massachusetts on January 9, ¡1973, in which the Chief Justice Tauro wrote the opinion: “ ‘ The money does not become the property of the bank. The fund is merely intrusted to the bank as a trustee or bailee without any authority on the part of the bank to use it as its own.’” In addition, Chief Justice Tauro referred to a number of cases including a statement found in the United States Court of Appeals for the Second Circuit: “ ‘ There are certain principles we regard as established: * * * Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be . sued either at law for money had and received, or in equity as a trustee, for breach of trust.’ ” Further on, the opinion of Chief Justice Tauro states (p. 615): “If the defendant, as a fiduciary, invested the tax payments and accumulated a profit thereon, which the defendant’s demurrer is considered to admit * * * then an accounting, as prayed for by the plaintiffs, would be an appropriate form of relief to determine what, if anything, is due the plaintiffs.”
Chief Justice Taubo strikes down the brief of the .Savings Banks Association of Massachusetts, submitted amicus curiae, and states that its reliance on the Goldman v. Worcester (236 Mass. 319) is misplaced, as well as the other-cases cited by the Savings Banks Association of Massachusetts, and concludes that the plaintiffs’ bill (complaint) alleges sufficient facts to state a cause of action, which, if proved, requires an accounting *290 'between the parties of profits, if any, realized by the bank on the tax payments held in trust by the bank. Our holding, limited to the present record, is simply that there are sufficient averments in the plaintiffs’ bill to state a cause of action.
For all the reasons stated hereinabove, the court finds in favor, of the plaintiffs ¿gainst the defendant in the sum of $136.