**Kathleen S. PUSEY, Plaintiff, Respondent, and Cross-Appellant,**

v.

**Robert O. PUSEY, Defendant, Appellant, and Cross-Respondent.**

**No. 20365.**

Supreme Court of Utah.

Aug. 18, 1986.

Rehearing Denied Dec. 3, 1986.

118

Robert O. Pusey, pro se.

Valden Livingston, Salt Lake City, for plaintiff, respondent, and cross-appellant.

DURHAM, Justice:

Defendant appeals from the portion of a decree of divorce awarding plaintiff one-half of the value of assets of a corporation formed during their marriage and awarding plaintiff $3,000 toward her attorney fees. Plaintiff cross-appeals, challenging the custody award to defendant of the parties' older son. We affirm.

The parties were married twelve years and had two sons, aged twelve and nine at the time of trial in 1984. Defendant and his mother owned a corporation, Fun Fair, Inc., at the time defendant married plaintiff. In 1975, the parties purchased a home in Bountiful with joint funds. In 1982, the parties formed Load Alert, Inc., which purchased real property known as the Western General Dairy facility. Both parties were officers of the corporation. At trial, defendant claimed that Load Alert obtained a loan of $69,000 from Fun Fair, Inc., to acquire or remodel the Western General Dairy facility. Additional small debts of Load Alert amounted to $4,000.

The trial court found that defendant had failed to carry his burden of proving that the purported $69,000 loan of Load Alert did in fact exist. It established the net worth of Load Alert at $123,587, after deducting debts of $4,000, and the equity in the Bountiful home as $43,000. Of a total marital estate of $166,587, plaintiff was awarded $83,293.50, $43,000 awarded to her as the equity in the home and $40,293.50 assessed as a money judgment against defendant and liened against the dairy. Fun Fair, Inc., was awarded to defendant.

The trial court conversed with the parties' two minor children in chambers and learned that the older boy expressed a marked preference for living with his father, whereas the younger boy indicated equal attachment to both parents. In spite of recommendations by a social worker that the parties be awarded joint custody and by plaintiff's brother, who had given the family professional counseling, that plaintiff would be the better parent to have custody of both children, the trial court awarded custody of the older boy to defendant and custody of the younger to plaintiff, with reasonable visitation rights in both parties.

I.

Defendant assails the trial court's award of one-half of the Load Alert property to plaintiff as inherently inconsistent with the court's finding that the assets of Fun Fair, Inc., were defendant's premarital assets not subject to division with plaintiff. He contends that the award is inconsistent with decisions from this Court which have uniformly returned premarital assets to the owner spouse and, also, that the court should have returned to him the $69,000 loan obtained from Fun Fair before dividing the marital estate. In support, he cites *Preston v. Preston*, 646 P.2d 705 (Utah 1982); *Georgedes v. Georgedes*, 627 P.2d 44 (Utah 1981); *Jesperson v. Jesperson*, 610 P.2d 326 (Utah 1980); and *Humphreys v. Humphreys*, 520 P.2d 193 (Utah 1974). In every one of those cases, proof was made

by the prevailing spouse that real property had been purchased with premarital assets, and those assets were awarded to the owner spouse before dividing the marital estate.

Defendant here utterly failed to prove that the loan did indeed exist. He proffered nothing to substantiate the obligation from Load Alert to Fun Fair, Inc. He testified that he could produce no papers documenting the loan and could not establish any terms and conditions of repayment or rates of interest charged. The trial court expressly found that throughout the marriage defendant had commingled corporate and personal funds so that it could not trace any assets to any source and found that there was no debt that Load Alert owed to anybody and that defendant had failed to carry his burden of proof. This Court endows the trial court's adjustment of financial interests of the parties with a presumption of validity and does not review their values absent a clear abuse of discretion. *Argyle v. Argyle,* 688 P.2d 468, 470 (Utah 1984); *Turner v. Turner,* 649 P.2d 6, 8 (Utah 1982). We do not lightly disturb property divisions made by the trial court and uphold its decision except where to do so would work a manifest injustice or inequity. *Turner,* 649 P.2d at 8. No injustice or inequity resulted from the property division, where the trial court awarded plaintiff $83,293.50 and defendant $186,-793.50 in assets.[1]

## II.

■ Defendant next attacks the trial court's award of $3,000 attorney fees to plaintiff. He claims that plaintiff failed to introduce any evidence of financial need. Under Utah law, an award "must be based on the need of the party and the reasonableness of the fee awarded a matter largely left to the discretion of the trial court." *Walther v. Walther,* 709 P.2d 387, 388 (Utah 1985) (*citing Beals v. Beals,* 682 P.2d 862 (Utah 1984), and *Kerr v. Kerr,* 610

P.2d 1380 (Utah 1980)). Plaintiff's counsel presented an itemized bill totalling $9,700 attorney fees which defendant's counsel accepted as reasonable. Plaintiff testified that her monthly take-home pay was about $500 less than her monthly expenses. The trial court awarded her $3,000 and required her to assume more than $6,000 in attorney fees. In light of her testimony that her monthly expenses were considerably greater than her income, that award was well within the discretion of the trial court. An award of attorney fees should not be overturned absent a clear showing that the trial court abused its discretion. *Walther,* 709 P.2d at 388. No such abuse existed here.

## III.

■ Plaintiff cross-appeals from that portion of the divorce decree awarding custody of the older son of the marriage to defendant and requests that both children be awarded to her. This Court's judicial preference for the mother, reaffirmed in *Nilson v. Nilson,* 652 P.2d 1323 (Utah 1982), and *Lembach v. Cox,* 639 P.2d 197 (Utah 1981), is cited in support. We acknowledged in dictum the continued vitality of that preference in *Jorgenson v. Jorgenson,* 599 P.2d 510, 511 (Utah 1979), "all other things being equal." We believe the time has come to discontinue our support, even in dictum, for the notion of gender-based preferences in child custody cases. A review of the cases cited by plaintiff shows that "all other things" are rarely equal, and therefore this Court has not treated a direct challenge to the maternal preference rule in over five years. In the unlikely event that a case with absolute equality "of all things" concerning custody is presented to us, the provisions of article IV, section 1 of the Utah Constitution and of the fourteenth amendment of the United States Constitution would preclude us from relying on gender as a determining factor.

Several courts have declared the maternal preference, or "tender years presump-

---

1. Included in the award to defendant were valuable tapestries which defendant had owned prior to the parties' marriage.

tion," unconstitutional. As early as 1973, the New York Family Court, Kooper, J., held that "application of the 'tender years presumption' would deprive [the father] of his right to equal protection of the law under the Fourteenth Amendment to the United States Constitution." *State ex rel. Watts v. Watts*, 77 Misc.2d 285, 350 N.Y. S.2d 285, 290 (1973). Citing several studies which determined that a child needs "mothering" rather than a mother, *id.*, the court determined that the presumption does not serve a compelling state interest. *Id.*, 350 N.Y.S.2d at 291. Although *Watts* used a strict scrutiny test, it is equally doubtful that the maternal preference can be sustained on an intermediate level of review. *See* Hyde, *Child Custody in Divorce*, 35 Juv. & Fam.Ct.J. 1 at 10 (Spring 1984). This is particularly true when the tender years doctrine is used as a "tie-breaker," as it is in Utah, because in that situation the Court is "denying custody to all fathers who ... *are as capable as the mother....* [W]hile over inclusiveness [sic] is tolerable at the rational basis level of review, it becomes problematic at the heightened level of scrutiny recognized in gender discrimination cases." *Id.* at 11 (emphasis added; footnotes omitted).

Even ignoring the constitutional infirmities of the maternal preference, the rule lacks validity because it is unnecessary and perpetuates outdated stereotypes. The development of the tender years doctrine was perhaps useful in a society in which fathers traditionally worked outside the home and mothers did not; however, since that pattern is no longer prevalent, particularly in post-separation single-parent households, the tender years doctrine is equally anachronistic. *See* Hyde, *supra*, at 6. Further, "[b]y arbitrarily applying a presumption in favor of the mother and awarding custody to her on that basis, a court is not truly evaluating what is in the child's best interests." *Id.* at 10.

■ We believe that the choice in competing child custody claims should instead be based on function-related factors. Prominent among these, though not exclu-

sive, is the identity of the primary caretaker during the marriage. Other factors should include the identity of the parent with greater flexibility to provide personal care for the child and the identity of the parent with whom the child has spent most of his or her time pending custody determination if that period has been lengthy. Another important factor should be the stability of the environment provided by each parent. *See generally* Atkinson, *Criteria for Deciding Child Custody in the Trial and Appellate Courts*, 18 Fam.L.Q. 1 (Spring 1984).

In accord with those guidelines, we disavow today those cases that continue to approve, even indirectly, an arbitrary maternal preference, thereby encouraging arguments such as those made by the cross-appellant in this case.

■ In *Jorgenson*, 599 P.2d 510 (Utah 1979), we affirmed a split custody award made by the trial court. "While it is true that a child custody award which keeps all the children of the marriage united is generally preferred to one which divides them between the parents, that preference is not binding in the face of considerations dictating a contrary course of action." *Id.* at 512.

Although the trial court in this case found both parties to be fit custodial parents, its ultimate judgement on custody required an assessment of the complex situation before it. The court did not follow the recommendations made by the social worker or the plaintiff's brother. As child custody determination turns on numerous factors, however, that choice was within its discretion. *See Fletcher v. Fletcher*, 615 P.2d 1218, 1224 (Utah 1980). The evidence indicated that the twelve-year-old son manifested a strong preference for his father, which had caused friction and ill feelings between him and his mother. The father also appeared to show a preference for the older son, which fact supports the trial court's decision to split the custody of the children between the parents. Certainly these were factors dictating the course of

action taken by the trial court. We find no abuse of discretion in the custody award.

The judgment is affirmed, the parties to bear the costs incurred in their respective appeals.

Gordon R. HALL, C.J., and STEWART, J., concur.

HOWE, J., concurs in the result.

ZIMMERMAN, Justice (concurring in the result):

I concur with Justice Durham's opinion, for I also believe it is time to discontinue any hint of support for the notion of gender-based preferences in child custody cases. However, I believe that such a result can be achieved without resort to constitutional analysis.

The maternal preference existed in one form or another as a matter of legislative policy in Utah from 1903 to 1977, when section 30–3–10 of the Code was repealed by the legislature.[1] *See Jorgensen v. Jorgensen*, 599 P.2d 510, 511 (Utah 1979). Despite the repeal of this statute, this Court has stated in dicta that as a matter of judicial policy we will continue to recognize a maternal preference when all other factors are equal. *Id.; Henderson v. Henderson*, 576 P.2d 1289, 1290 (Utah 1978); *Smith v. Smith*, 564 P.2d 307, 309 (Utah 1977). To date, we have not been presented with a case where all other factors have been equal.

The original justification for the use of a maternal preference was that it would be in the best interest of the child to be with the mother. *Steiger v. Steiger*, 4 Utah 2d 273, 276, 293 P.2d 418, 420 (1956). This was probably based on two assumptions which were current in 1903 when the presumption was enacted: first, that the mother almost invariably served as a child's primary caregiver prior to divorce; and second, that biologically a child was simply better off with a mother.

Concerning the first assumption, we can take judicial notice that today more women than ever before have entered the work force. Accordingly, it is much more likely today than when the presumption first arose that the mother will not have been the primary caregiver. As for the second assumption, it may represent the consensus of Victorian America, and today it may be a matter of individual opinion, but I am aware of no empirical evidence that supports the notion that females are superior caregivers, *all other things being equal.*

I see no need to perpetuate as judicial policy a preference that lacks any firm foundation in today's world. This Court has maintained the preference in dicta despite legislative intent to the contrary, and it can and should abandon it without resort to constitutional analysis. Any legitimate interests served by the preference are equally well viewed by a gender-neutral primary caregiver preference.

---

1. The original statute passed in 1903 specifically awarded the mother custody of minor children. 1903 Utah Laws, ch. 82, § 1. In 1969, this outright award of custody was changed, but the language of the statute still took cognizance of "the natural presumption that the mother is best suited to care for young children." 1969 Utah Laws, ch. 72, § 7.