James Z. DAVIS, Plaintiff, Respondent, and Cross–Appellant,

v.

Penny A. DAVIS, Defendant, Appellant, and Cross–Respondent.

No. 860134.

Supreme Court of Utah.

Jan. 21, 1988.

Gordon L. Roberts, T. Patrick Casey, Salt Lake City, for defendant, appellant and cross respondent.

Bert L. Dart, John D. Parken, Salt Lake City, for plaintiff, respondent and cross appellant.

ZIMMERMAN, Justice:

Defendant Penny A. Davis appeals from a decree of divorce awarding custody of the parties' minor child to plaintiff James Z. Davis. James Davis cross-appeals, challenging the district court's award of permanent alimony to Penny Davis. We affirm.

At the time of the divorce, the parties had been married nearly thirteen years and had one child, J.Z., born in February of 1982. In the summer of 1984, Penny told her husband that she wanted a separation. She expressed frustration in dealing with J.Z. and dissatisfaction with the marriage. The two agreed to a divorce, and James contacted a friend and attorney, who prepared the necessary papers. A signed complaint was filed in the district court on Friday, August 10, 1984, and the parties arranged to have a district judge hear the uncontested divorce at his house on Saturday, August 11th. One reason the parties gave for expediting the process was that Penny's parents were out of the country and she wanted the divorce granted as quickly as possible because she was afraid that when her parents returned they would try to persuade her to stay married.

At the hearing, the parties agreed that James would have custody of J.Z. so that the child could remain in the family home. They also agreed that Penny would receive $500 a month alimony for ten years. They waived all waiting periods, and the divorce decree was final on August 13, 1984. Shortly after the hearing, Penny filed a motion under Utah Rule of Civil Procedure 60(b) to set aside the decree on grounds that she was emotionally unstable at the time of the hearing and did not realize the consequences of her actions. A hearing was held and the motion was granted. On September 11, 1985, the divorce decree was set aside.

The trial of the renewed divorce proceedings was held in November of 1985. By that time, the parties had agreed to a stipulation regarding the division of marital property. Only the issues of child custody and alimony remained. After a three-day trial, the court awarded custody of J.Z. to James and awarded Penny alimony of $750 per month.

■ On appeal, Penny argues that the trial court erred when it awarded James custody of J.Z. Penny claims that the award of custody to James was not in the best interests of the child; therefore, it should be reversed. In divorce proceedings, including initial custody awards, we give trial courts broad discretion. *E.g., Moody v. Moody,* 715 P.2d 507, 510 (Utah 1985). So long as that discretion is exercised within the confines of the legal standards we have set, *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985), and the facts and reasons for the decision are set forth fully in appropriate findings and conclusions, *Smith v. Smith,* 726 P.2d 423, 426 (Utah 1986), we will not disturb the resulting award. We review the findings made by a judge sitting without a jury under the "clearly erroneous" standard of Utah Rule of Civil Procedure 52(a). *Ashton v. Ashton,* 733 P.2d 147, 149–50 n. 1 (Utah 1987); *see* Utah R.Civ.P. 52(a).

■ Reviewing the trial court's findings and conclusions pertaining to the custody award in light of the foregoing standard, we conclude that no abuse of discretion occurred. The trial court considered a number of factors in awarding custody to James. Principal among them were that James had been J.Z.'s primary caregiver for over a year and had provided a very stable environment. In considering competing claims to custody between fit parents under the "best interests of the child" standard, considerable weight should be given to which parent has been the child's primary caregiver. *Pusey v. Pusey,* 728 P.2d 117, 120 (Utah 1986).

■ Penny, however, contends that the court's order was improper because it had the effect of rewarding James for his exploitative conduct in securing the earlier hurried divorce and custody order. But for that order, he would not have had custody of J.Z. for the year in question. The law does not, when determining custody of a child, attempt to reward or punish one parent or the other. This Court has repeatedly stated that the child's best interests are to be the primary focus of a custody decision. *See Sanderson v. Tryon,* 739 P.2d 623, 626 (Utah 1987); *Fontenot v. Fontenot,* 714 P.2d 1131, 1132 (Utah 1986); *Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984); *Mitchell v. Mitchell,* 668 P.2d 561, 564 (Utah 1983); *Hyde v. Hyde,* 22 Utah 2d 429, 431, 454 P.2d 884, 885 (1969). Of

course, if the primary caregiver gained that status wrongfully, courts should be careful not to reward such conduct by giving the wrongdoer a consequential advantage in evaluating the custody question. *See, e.g., In re Halloway,* 732 P.2d 962, 971–72 (Utah 1986).

In the instant case, however, there is no finding that James acted wrongfully in obtaining custody of J.Z. In fact, Penny actually wanted her husband to take custody at the time of the initial divorce. Difficulties she was encountering in caring for the child were one of the reasons she sought the divorce. In light of her reasons for seeking a divorce and her emotional instability during the fall of 1984, there is no reason to believe that Penny would have acted differently toward J.Z. or that the trial court would have awarded her custody if the initial proceedings had been conducted in any other fashion. She has now changed her mind, but that does not mean that the court that granted the second divorce should have discounted the fact that her husband had actual custody of the child for a substantial period and functioned well as a primary caregiver. J.Z. has resided with his father since August of 1984. He has lived in the same house since he was born. Ample evidence was presented to support the trial court's determination that J.Z. lives in a stable, secure environment and that he and James have a loving relationship.

Penny, on the other hand, failed to present any evidence to support her contention that J.Z.'s best interests would have been furthered by placing J.Z. with her. Although she presented testimony that she is now emotionally stable and no longer depressed, the trial court was not persuaded that her present stability was sufficient to offset its concerns about her ability to provide a stable environment for J.Z. The court found that Penny was still in a period of reconstruction from her earlier emotional difficulties. Based on the evidence presented, the trial court's award of custody to James was within its discretion.

James's claim on cross-appeal is that the trial court abused its discretion in awarding Penny alimony. Trial courts have essentially the same discretion in awarding alimony and dividing property as they have in making awards of custody; so long as the trial court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions, we will not disturb its rulings. *See, e.g., Jones v. Jones,* 700 P.2d at 1074; *Jorgensen v. Jorgensen,* 599 P.2d 510, 511–12 (Utah 1979), *overruled on other grounds, Pusey v. Pusey,* 728 P.2d at 119.

■ The standard for determining alimony awards is well settled. The trial judge is to consider three factors: first, the financial condition and needs of the party seeking alimony; second, that party's ability to produce a sufficient income for him- or herself; and third, the ability of the other party to provide support. *Jones v. Jones,* 700 P.2d at 1075 (quoting *English v. English,* 565 P.2d 409, 411–12 (Utah 1977)). All three factors must be considered, and the ultimate test of the propriety of an alimony award is whether, given all of these factors, the party receiving alimony will be able to support him- or herself "as nearly as possible at the standard of living ... enjoyed during marriage." *Jones,* 700 P.2d at 1075 (quoting *English,* 565 P.2d at 411).

■ In this case, the trial court carefully weighed all three factors in arriving at the $750 per month award. With alimony, Penny will have a total income per year of approximately $36,000. Even at this level, her lifestyle probably will not equal that which she enjoyed during marriage. After the alimony payment, James will have a yearly income approaching $100,000. He can afford the alimony awarded and is left with ample resources to provide himself with what is very likely to be a far more luxurious living standard than Penny will enjoy. We cannot agree with James that in fixing alimony, the trial court gave Penny an excessive award.

For the foregoing reasons, the judgment of the trial court is affirmed. The parties are to bear their own costs.

HALL, C.J., STEWART, Associate C.J., and DURHAM, J., concur.

HOWE, Justice: (concurring and dissenting).

I concur in that portion of the opinion regarding the award of custody. I dissent only from the majority's affirmance of the award of $750 per month permanent alimony.

This Court has described the purpose of alimony: "[T]he most important function of alimony is to provide support for the wife as nearly as possible at the standard of living she enjoyed during the marriage, and to prevent the wife from becoming a public charge." *English v. English*, 565 P.2d 409, 411 (Utah 1977). To determine the propriety of an award of alimony, three criteria have been established: (1) the financial conditions and needs of the wife; (2) her ability to produce a sufficient income for herself; and (3) the ability of the husband to provide support. *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985); *English*, 565 P.2d at 411–12. Failure to consider these factors constitutes an abuse of discretion.

First, we look at the financial condition and needs of defendant. She is in her early thirties, healthy, and well-educated. She has worked and continues to work full-time as a teacher. She received a large cash settlement at the time of the divorce, viz., $164,000, as well as substantial amounts of personal property. She was not left with any indebtedness incurred during the marriage, nor was she ordered to pay child support to plaintiff. Assuming she continues to teach and invests the proceeds of the settlement, she is in a strong financial position without additional support from plaintiff.

The second factor to be considered is defendant's ability to produce a sufficient income for herself. At the time of the divorce, she was earning $2,290 a month on a twelve-month contract. In addition, she had income from employment during summer vacation. She has both a bachelor's and a master's degree and, as noted above, is obviously capable of producing income sufficient to provide herself with a very adequate standard of living. This case is unlike those in which the wife has no independent income, is in her fifties, and lacks work experience or training. *See Jones*, 700 P.2d at 1076.

The final factor to be considered is the ability of the husband to provide support to the wife. Plaintiff is a partner in a large law firm. He draws a gross salary of over $100,000 a year. The district court noted two factors which have a considerable impact on plaintiff's income: first, he is in an income tax bracket of approximately 50 percent,[1] and second, he is required to provide full support for the parties' minor child, J.Z. The district court, however, reasoned that if plaintiff's monthly income was reduced by $750 and defendant's was increased by that amount, the "noticeable disparity" between the parties' incomes would be reduced and they would be placed "in a more equal position." I cannot agree with that reasoning. The purpose of alimony is not to equalize the incomes of the parties; it is a foregone conclusion that the practice of law has the potential for greater financial rewards than does the profession of teaching. (See this writer's concurring and dissenting opinion in *Gardner v. Gardner*, 748 P.2d 1076, (Utah 1988). Rather, the purpose of alimony is to provide an adequate lifestyle for the wife, measured by the criteria set forth in *Jones*. The evidence is clear that defendant's earnings, plus a reasonable return on her $164,000 cash, will provide her with well over the $2,063 she testified she needed monthly for support.

Thus, the district court's award of permanent alimony was an abuse of discretion when reviewed under the criteria established by this Court. This is not the type of situation where an award of permanent alimony, or any alimony whatsoever, is warranted. Should circumstances change in the future, defendant could always seek

---

**1.** While this was true at the time of trial, it does not reflect any changes wrought by the 1986 Tax Reform Act.

to modify the decree as provided by Utah Code Ann. § 30–3–5 (1984, Supp.1985).