DORA BARDACH, Appellant, *v.* CHAIN BAKERS, INC., et al., Defendants, and ABRAHAM SHERMAN, Respondent.

First Department, October 30, 1942.

*Julius Lerner* for appellant.

*Leo Pfeffer* and *M. Emanuel Balt* for respondent.

TOWNLEY, J.   This action was brought to rescind a contract of purchase and sale of the retail portion of a bakery.   The plaintiff was the purchaser.   The seller was Chain Bakers, Inc. The complaint also asks for damages for the fraud perpetrated on the plaintiff in connection with the sale by the defendants Greenberg and Lang, officers of the seller corporation, and the defendant Sherman, its attorney.   Judgment was rendered in favor of the plaintiff against the corporation, Greenberg and Lang who made no substantial defense and have not appealed. The complaint was dismissed as against the defendant Sherman.

Greenberg and Lang had been associated in operating a bakery corporation.   In November, 1940, the corporation was in financial difficulties and went out of business.   A petition in bankruptcy was filed, but there was a composition.   In December, 1940 in association with one Pinchevsky, Greenberg and Lang organized Chain Bakers, Inc. and leased the premises on 174th street in the Bronx.

In January, 1941 a financial statement prepared by an accountant employed by defendant owners showed that in the period from January ninth to January twenty-eighth, Chain Bakers, Inc. had operated at a loss of some $2500.   It had overdrawn its account by $1081.32, its assets were $619.48 and its liabilities were $3202.29.   Its weekly average gross income was $420.   It was thus hopelessly insolvent.

During this period the store was put upon the market and represented to be a successful going business.   A broker interested the plaintiff in its purchase.   Greenberg represented that the gross retail income was $550 to $600 a week.   Plaintiff finally agreed to purchase the store for $5,000.   Plaintiff was represented by counsel who met Sherman to arrange the contract.

Sherman who had had some dealings with Greenberg and Lang prior thereto stated that the sellers were doing very well and that all their bills from their previous difficulty had been cleaned up.   At this time Sherman knew that Greenberg and Lang's predecessor corporation had been liquidated through a marshal's sale, that checks had been given for merchandise which were not paid, that criminal proceedings had been threatened and that Sherman had promised the creditor's attorney that when the store was sold, his client would be paid as a preferred creditor.   At this time or shortly thereafter Sherman also knew that the seller corporation would not be able to pay the February rent and that dispossess proceedings had been started.   He knew that the broker was getting an excessive commission of

ten per cent. He knew too that there was an unpaid bill for wages for the workers in the bakery and that there was a Magistrate's Court proceeding because of bad checks.

On February sixth, the contract of sale was executed. The terms were that $2,400 was to be paid in cash, and $2,600 by notes and assumption of mortgage liabilities on fixtures. The weekly gross income was represented as $550. There was a trial period of one week provided for. A deposit of $250 was made and Sherman was escrow holder. Two days after the contract was signed Sherman paid out $200 of the $250 deposit to the corporation seller. Sherman testified that he knew this was wrong but that Greenberg told him they were short of cash. While Sherman admitted violating the escrow agreement, his excuse was that this was the first time he had received any business from Greenberg and was anxious to please him. On February thirteenth, $100 was paid to the broker on account of commissions, fifty dollars of which was advanced out of Sherman's own funds. The commissions, however, were not due until the sale was consummated. He then made further advances out of his own funds to Credit Utility and Morris Greenberg. The payment to Greenberg was to cover a bad check that had been given by Greenberg.

Under the agreement the balance of the purchase price was to be paid to Sherman in two installments and held in escrow pending the completion of the formalities required by the Bulk Sales Law (Personal Property Law, § 44; Cons. Laws, ch. 41). On February eighteenth, the parties again met at Sherman's office and $1,000 was paid on account. The next day Sherman paid $150 to an associate broker on account of commissions although they were not due. On February nineteenth, the parties met and Greenberg executed an affidavit necessary under the Bulk Sales Law purporting to list all the creditors of the seller. Sherman acted as notary. The creditors listed were thirteen in number and the liabilities were $1,032. Plaintiff through its attorney paid the balance due of $1,082.

Sherman knew that the affidavit which he had notarized was false. He knew that wage claims of about $600 were not listed although he was clearly advised by the secretary of the Baker's Union of the claims. He knew that there were additional claims of $1,050 which were not listed. Sherman immediately resumed making unauthorized payments out of the escrow moneys although the title closing was not to take place until March third. From that period on numerous checks were issued by Sherman to cover various bad checks issued by Greenberg and

to keep the creditors quiet so that the plaintiff would not discover the existent fraudulent condition.

Much more could be written showing the misconduct of defendant Sherman as escrow holder. Such a relationship is that of a fiduciary and Sherman owed the plaintiff the highest kind of loyalty. He was under a duty to disclose the situation which had come to his notice. He not only failed to disclose it and was silent when he knew the plaintiff was being defrauded, but by his conduct he actively aided the prosecution of the fraud both in what he said to the plaintiff and in disposing of the escrow moneys so as to prevent other people from drawing the plaintiff's attention to the situation.

The judgment, so far as appealed from, should be reversed, with costs, and judgment directed against the defendant Sherman as prayed for in the complaint, with costs.

MARTIN, P. J., GLENNON, COHN and CALLAHAN, JJ., concur.

Judgment reversed, etc. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.