OPINION OF THE COURT
Edward J. Greenfield, J.
Must every escrow agent in New York be licensed by the State Banking Department as a prerequisite for receiving and transmitting funds? Does the transfer of escrow funds outside the jurisdiction to earn higher interest constitute a conversion? These are some of the questions raised on this motion for summary judgment in a dispute between a Panamanian corporation and two Portuguese banks over the sale of a Norwegian built barge in Angolan waters to the Republic of Yemen.
The essential facts, as best as they can be pieced together from various parts of the voluminous papers supplied by the parties, appear to be as follows: Plaintiff Animalfeeds International, Inc. is a Panamanian corporation, all of whose stock is owned by a New Jersey corporation, International Proteins Corporation. Animalfeeds had contracted in Norway for the building of a special barge to be used as a floating fish meal factory, which upon completion was to be sold and delivered to an Angolan corporation named Protangue, 56% of whose shares were owned or controlled by International Proteins. The price was $2,700,000. An agency of the Angolan government put up $2,000,000 to help finance the purchase, and two Portuguese banks advanced $1,100,000 to cover the balance of the price and to provide some additional working capital. International Proteins was to furnish an additional $1,400,-000. The Angolan agency took a 50% mortgage on the barge as security. Animalfeeds chartered several fishing boats to operate in Angolan waters and supply fish to Protangue.
After two years, during which the operation of the barge proved to be unprofitable, the opportunity arose to sell the barge to the Republic of Yemen for $4,500,000. The Angolans were not informed of the true selling price of the barge, because Angola had restrictions on the transfer of dollars out of the country. Protangue, as the barge owners, purportedly *381 sold it back to Animalfeeds for $2,500,000, the proceeds to be used to pay off Protangue’s debts. The Republic of Yemen provided a letter of credit for $4,500,000 with a London bank, and the barge sailed. International Protein picked up the entire $4,500,000, but apparently neglected to pay Protangue so that its creditors could be paid off.
After the barge had departed from Angola and was en route to the Port of Aden, the tugboat which had it in tow picked up a distress call, turned around, and re-entered Angolan waters to lend assistance. At that time, the barge was seized.
In order to free the barge and the fishing boats that had serviced it, on December 7, 1974 the parties entered into a memorandum of understanding and an escrow agreement, which are the subject of this lawsuit. The agreement was executed in New York City. To procure the release of the barge and to cover the disposition of the proceeds of the fishing boats, Animalfeeds agreed that it, or its parent company, International Proteins, would deposit $2,560,000 in escrow, which was to be paid out as follows:
(a) $1,685,000 to Banco Inter Unido (which, as guarantor of the obligations of Protangue, had to answer to its Angolan creditors), upon written notice that the barge was free to sail from Angola;
(b) the balance of $875,000 to be released (1) when Protangue remitted payment in cash and letters of credit for three fishing boats, and (2) when International Proteins sold four fishing boats or had restrictions on their removal from Angolan waters lifted.
Banco Espirito, a Lisbon bank, was designated as the escrow agent, and the funds deposited by plaintiff were placed in a special escrow account it opened in the bank’s name with the Irving Trust Company in New York. The escrow funds were to remain on deposit with the Irving Trust Company until the conditions of the escrow were satisfied. Banco Espirito, though doing no banking business here, agreed to submit to the jurisdiction of the State of New York, and the parties agreed to be governed by the laws of this State.
On December 17, 1974, upon the instructions of a director of the Banco Espirito, the Irving Trust Company transferred $1,950,000 of the escrow account to its branch in Grand Cayman Island for the purpose of earning more interest than it could in New York. Those funds remained there for 45 days. Upon notification that the barge had been released, it directed *382 turnover of $1,685,000 of the escrow fund to Banco Inter Unido.
Plaintiff then commenced this lawsuit against Banco Espirito and the Irving Trust Company, challenging the validity of the escrow agreement and the actions taken with respect to it. Nine causes of action are set forth.
(1) Banco Espirito was not licensed under the Banking Law of the State of New York to transmit money or to exercise any fiduciary or trust powers within the State as an escrow agent;
(2) that the Irving Trust Company knew this was a deposit in escrow in violation of the Banking Law;
(3) that Banco Espirito, in failing to disclose that it could not act as an escrow agent, was guilty of fraud and deceit;
(4) that the escrow agreement is so vague and indefinite as to be unenforceable, null and void;
(5) that if Banco Espirito unknowingly believed it could rightfully act as escrow agent, the agreement was the result of mutual mistake;
(6) that performance of the escrow agreement has become impossible because the intended payees are in "occupied territory” in Angola;
(7) that plaintiff was compelled to enter into the agreement by overreaching and coercion;
(8) that the agreement was the result of unlawful extortion;
(9) that the transfer of the escrow funds to Grand Cayman Island constituted a conversion and a violation of the escrow.
Plaintiff demands the return of the $2,650,000 it deposited, with interest. It now moves for summary judgment on causes of actions 1, 3, 4, 5 and 9. Judgment for plaintiff on any one of them will render the remaining causes of action moot. Defendant opposes and cross-moves to consolidate this action with a prior action pending in this court by this plaintiff and its parent corporation, International Proteins, against the same defendants, and holding plaintiff’s motion for summary judgment in abeyance pending the taking of depositions.
The contentions with respect to the fourth cause of action can be dealt with briefly at the outset. Plaintiff contends that identity of the ultimate payees or beneficiaries were not set forth in the agreement and there was no direction as to what Banco Inter Unido and Banco Espirito were to do with the funds when they were released to them. Further, there was no *383 direction for return of the funds to plaintiff if the events specified in the agreement were not to occur.
With these contentions the court cannot agree. The agreement clearly is not so vague and indefinite as to be null and void. An escrow agreement, while imposing a fiduciary relationship, and assuming some of the characteristics of a trust, is in essence a contractual undertaking to assure the carrying out of obligations already contracted for. Therefore, it need not partake of the formality or particularity of a trust instrument. The parties to whom the funds are to be turned over are clearly identified — Banco Inter Unido on the release of the barge, Banco Espirito on the disposition of the fishing boats. The fact that they may be nominees who are obliged to make further distributions to other payees is of no moment. An escrow agreement is valid if the conditions for its termination are spelled out, even though the obligations of the recipient of the fund as to its further application are not. Complaint by the party whose attorneys drafted the instrument, or had a hand in negotiating its terms, that it is so vague as to be unenforceable, may be given short shrift.
The memorandum, though not unduly long (few escrow agreements are or should be), sets forth with considerable precision the parties to the agreement, the amount deposited, the name of the escrowee, the depository for the funds, the conditions to be met before the funds are to be released and the parties to receive the funds. The identity of ultimate payees, the time within which the conditions are to be met and the disposition if the conditions are not met, while desirable, are not omissions which render the agreement unenforceable. The court will look for a reasonable time for performance if it is not spelled out. Similarly, it will read into the agreement an obligation to return the escrow if the conditions are not complied with. Spelling out every possible detail, anticipating every conceivable contingency when the intentions and obligations of the parties have already been made amply clear advances pettifoggery more than it enhances clarity. All parties to the agreement have fully performed, except for plaintiff, so to resist carrying out its obligations because of imagined doubts and difficulties which never occurred would signal the triumph of fantasy over reality.
Of much greater general significance are those causes of action which constitute an attack on the alleged incapacity of Banco Espirito to act as an escrow agent. Plaintiff insists that *384 an escrow agreement is illegal and unenforceable unless the escrow agent has been licensed by the State Department of Banking. To carry the argument further, it is asserted that the escrow agent who has not been licensed has committed a misdemeanor for violation of article 13-A of the Banking Law. That contention is grounded on section 641 which bars persons from engaging in the business of receiving money for transmission to others without a license. The blindly literal application of that section would undoubtedly startle attorneys and others by the thousands who have been escrow agents, and call escrow agreements by the tens of thousands into question. It would also jeopardize the New York deposits of foreign banks and investors who had no Banking Department license.
Had that been the intention of the Legislature when it enacted the section in 1963 (L 1963, ch 1000), it most certainly would have been the subject of extended discussion, but neither at the time nor in any of the intervening years until now has there been such a startling suggestion.
It is urged that the question is not even open for consideration by this court for it has already been established as "the law of the case” that a license by Banco Espirito as an escrow agent was required. That position relies on the prior decision by Mr. Justice Tierney denying a motion by Banco Espirito to dismiss the action against it for lack of jurisdiction (Animalfeeds Int. v Banco Espirito Santo e Comercial de Lisboa, NYLJ, March 31, 1976, p 7, col 5). Jurisdiction had been sought under section 207 of the Banking Law through service on the Superintendent of Banks. Foreign corporations could properly be served in that manner if they did any business in the State requiring a license. The court concluded that Banco Espirito had "received” the escrow fund for transmission and had agreed to transmit the money to another party on the happening of a specified event. "It therefore engaged in an act which required licensing”, which subjected it to jurisdiction under section 207 of the Banking Law. (Animalfeeds Int. v Banco Espirito Santo e Comercial de Lisboa, supra.) Defendant’s appeal to the Appellate Division was withdrawn.
This court does not consider the prior ruling as a binding determination that licensing was in fact required.
In the case of Pugatch v David’s Jewelers (53 Misc 2d 327, 328), this court had occasion to make these observations with respect to "the law of the case.” "What we call 'the law of the *385 case’ — a prior interlocutory ruling which, when unchallenged, is considered controlling throughout the balance of the litigation — is the pragmatic result of two salutary principles. They are that matters once litigated should not be endlessly relitigated, and that a Judge handling a subsequent aspect of a case should not, in disagreement with a prior ruling by a colleague, sit in appellate review of a Judge of concurrent jurisdiction. (Mt. Sinai Hosp. v. Davis, 8 A D 2d 361; Graham v. Board of Supervisors, 25 A D 2d 250.) Of course, a Judge passing on the earlier stages of a case owes a reciprocal duty to those who come after him to decide no more than what is essential for disposition of the issue before him, and to be prudent and circumspect in the choice of language he adopts, for litigants are apt to put more weight and stress on provisional judicial structures than they are designed to bear.”
All that was essential for the prior ruling by the court was a finding of jurisdiction. That is all that was "essential for disposition of the issue.” All else was dictum uttered in passing. The requirement of licensing was not essential for a finding of jurisdiction, which could have been even more readily predicated upon the explicit agreement by Banco Espirito that it agreed "to submit to the jurisdiction of the United States, State of New York” and that its laws would govern for all purposes. The law of the case is that jurisdiction exists, and nothing else.
The opinion by the assistant to the Deputy Superintendent of the Banking Department, in reply to an ex parte inquiry by plaintiff’s counsel, that Banco Espirito was unlicensed in New York, and therefore not authorized to receive money for transmission, while entitled to some weight, certainly is not controlling on the issues before the court.
Foreign banks are required to be licensed in this State as a prerequisite for transacting business here so as to protect the public interest and the interests of depositors. (Banking Law, § 10; Rothschild v Manufacturer’s Trust Co., 279 NY 355.) While the transaction of a banking business by an unlicensed foreign bank is prohibited by section 200 of the Banking Law, a single isolated transaction by a foreign bank accepting no deposits from local customers but rather as a designated escrowee, occupying status as a depositor in a New York bank, appears to require no special license. It is not regularly "doing business” here, and it acts merely as a conduit in forwarding funds on deposit with the Irving Trust *386 to the rightful recipients once the conditions of the escrow have been met.
It is the depository, Irving Trust, which received and held the money, and disbursed it on instructions from the depositor. (Cf. Fosdick v Investors Syndicate, 266 NY 130.) This court concludes that unless a general banking business is being transacted, an escrow agent who holds funds on deposit in a New York bank need not be licensed, and the escrow agreement to which he is a party is not invalid or unenforceable because no license has been obtained.
A contrary conclusion would be insupportable. Not only would it shake the foundations of a well-established system, but it would call for invalidation of a transaction all parties desired at the time it was made, whether or not anyone was injured through lack of a license, with resultant unjust enrichment of the party to whom the escrow money would be returned after the other party had irrevocably changed its position in reliance upon the expectation the agreement would be carried out.
The ninth cause of action on which plaintiff seeks summary judgment alleges that the escrow funds were converted when, upon the instructions of a director of Banco Espirito, $1,950,-000 of the escrow money was transferred to Irving Trust Company’s branch in Grand Cayman Island. The memorandum of understanding provided that "the escrow funds deposited with irving trust company shall remain on deposit with the irving trust until all of the conditions of the escrow shall be satisfied”.
Plaintiff insists that these words must be read as if they said the funds "shall remain on deposit with the Irving Trust Company only in a New York branch, and nowhere else.” Such a construction is not warranted. Whether the funds were in New York or at some other Irving Trust branch, they were still on deposit with Irving Trust, and Irving Trust remained fully accountable and responsible for them. Cases holding that for purposes of attachment each branch of a bank must be considered a separate entity, such as Jackson Co. v Animashaun (148 NYS2d 66) and Cronan v Schilling (100 NYS2d 474, affd 126 NYS2d 192) are inapposite.
The funds were transferred from one branch to another in order to earn a higher interest rate. They remained intact, and no money was lost. It is difficult to understand how plaintiff can claim any damages under those circumstances. *387 The fund was augmented, not depleted. (Cf. Schuman v Conforti, 26 NY2d 755.)
Defendant Banco Espirito has cross-moved to permit discovery pursuant to CPLR 3212 (subd [f]) and for an order consolidating this action with a prior action in which plaintiffs parent company, International Proteins Corporation, is also a party. In view of the foregoing conclusions of the court that no basis exists for plaintiffs claims that Banco Espirito required a license to act as the escrow agent, that the agreement is not so vague and indefinite as to be unenforceable and that the transfer of funds to the Irving Trust branch in Grand Cayman Island did not constitute conversion, summary judgment for plaintiff is denied and, pursuant to CPLR 3212 (subd [b]), partial summary judgment is awarded in favor of defendant dismissing the five causes of action which are the subject of this motion. Accordingly, defendant’s request for a stay or continuance of the motion to permit discovery is academic. With respect to the remaining claims of impossibility, coercion and extortion which are alleged in bar of enforcement of the agreement, factual issues are presented which would have to be tried. Consolidation of this case with the one in which International Proteins is a party is clearly warranted, since the same transactions and identical issues of fact and law are presented.
Accordingly, plaintiffs motion for summary judgment is denied and partial summary judgment is awarded in favor of defendant dismissing causes of actions 1, 3, 4, 5 and 9. Defendant’s cross motion is granted to the extent it seeks consolidation, and otherwise denied, without prejudice to any further discovery on the remaining issues in the case.