In re 2903 WINES & SPIRITS, INC., Debtor.

Irving ARZT, as Trustee of 2903 Wines & Spirits, Inc., Plaintiff,

v.

ROZZIE LIQUORS, INC., Michael N. Alexander, Donald McHenry and George S. Goldberg, Defendants.

ROZZIE LIQUORS, INC., a Corporation of the State of New York, and Michael N. Alexander, Defendants-Cross-Claimants,

v.

Donald McHENRY and George S. Goldberg, Cross-Claimants Defendants.

No. 83 Civ. 1945 (JFK).

United States District Court, S.D. New York.

Dec. 13, 1984.

Harold S. Berzow, Kevin J. Nash, Finkel, Goldstein & Berzow, New York City, for plaintiff.

Leo Kaplowitz, Warren L. Fink, Kaplowitz & Wise, Linden, N.J., for defendants-cross-claimants.

Robert F. Meehan, Altieri, Kushner & Miuccio, New York City, for cross-claimants defendants.

## OPINION AND ORDER

KEENAN, District Judge:

Michael N. Alexander ("Alexander") and Rozzie Liquors, Inc. ("Rozzie Liquors"), as defendants and cross-claimants, seek partial summary judgment: (1) adjudicating a May 12, 1982 agreement between Alexander, Rozzie Liquors and Donald McHenry ("McHenry"), acting as the sole shareholder, officer and director of 2903 Wines & Spirits, Inc. ("Wines & Spirits"), to be nonassumable by Wines & Spirits' trustee under § 365 of the Bankruptcy Act, (2) denying any relief that would give effect to the May 12th agreement, and (3) awarding Alexander and Rozzie Liquors the sum of $75,000 plus interest currently held in the escrow account of George Goldberg ("Goldberg"). Goldberg, who was McHenry's attorney, cross-moves for summary judgment dismissing all claims against him on the condition that he deposit, in accordance with Rule 67 of the Federal Rules of Civil Procedure, the sum of $75,000 plus interest currently held in his escrow account with the Clerk of this Court. Goldberg also seeks his attorney's fees and expenses in defense of the stakehold. The plaintiff trustee in this action opposes both motions.

### Background

On May 12, 1982 a written contract for the sale of a liquor business was entered into between Wines & Spirits, as seller, and Rozzie Liquors, as buyer. Donald McHenry was the sole shareholder, officer and director of Wines & Spirits and Michael Alexander was, and remains today, the sole shareholder, officer and director of Rozzie Liquors. George S. Goldberg was the attorney for McHenry and Wines & Spirits and Oscar A. Bloustein was the attorney for Alexander and Rozzie Liquors. On the day the agreement was entered into, pursuant to ¶ 2(a) of the contract of sale, Alexander deposited $25,000 in an escrow account held by Goldberg.

On June 22, 1982, McHenry and Alexander arrived at Goldberg's office and requested that Goldberg release the $25,000 escrow deposit. Before acceding to their wishes, Goldberg claims he telephoned Alexander's attorney, Bloustein, to inquire whether Alexander had consulted with him. Bloustein stated that he had spoken with Alexander about the matter and had been unsuccessful in dissuading his client from consenting to such a release (Bloustein Aff. ¶¶ 5–7, Goldberg Aff. ¶ 5). According to Bloustein, McHenry and Harvey Saunders, the broker for the sale, convinced Alexander to release the escrow funds because the store had no credit and the money was needed to replenish the dwindling stock (Bloustein Aff. ¶ 5). Apparently, Alexander agreed to the release to avoid diminishing the value of the store (Bloustein Aff. ¶ 6).

Alexander, however, contends that his consent was not voluntary. Alexander admits that he spoke with Bloustein, but he maintains that Bloustein told him to "leave this decision [to release the escrow funds]

up to George [Goldberg]" (Alexander Dep. 25–26, 29). Alexander testified that he "did not know what [he] was doing" (Alexander Dep. 87). He claims he was under pressure in taking over a new business, selling his taxi operation and helping his girlfriend through her divorce (Alexander Dep. 33–34). Alexander further asserts that everyone involved in the transaction knew of these pressures and took advantage of him. In addition, Alexander claims that Goldberg threatened to employ legal technicalities to keep Alexander from getting the store unless Alexander agreed to release the escrow funds (Alexander Dep. 23–24).

Whether Alexander consented under duress, as he describes it, or willingly went forward with the release, as the other witnesses have claimed, is a matter in dispute. It is not disputed, however, that Goldberg, after talking with Bloustein, made out a check for $25,000 payable to Alexander. Alexander promptly endorsed the check over to McHenry. Alexander claims that he endorsed the check to McHenry at the behest and urging of Goldberg (Alexander Dep. 32). Alexander further contends that he had no idea what plans McHenry had for the money (Alexander Dep. 33). In return for consenting to the release and endorsing the check to McHenry, Alexander received a promissory note for $25,000 plus interest.

Between the May 12th contract date and mid-September, Alexander visited the Wines & Spirits location in an effort to acquaint himself with the business. During early September, 1982, Alexander apparently managed the store and opened a bank account in the name of Rozzie Liquors. He met with salesmen and used the store's daily receipts to pay creditors (Alexander Dep. 45–51). Plaintiff contends that during this time Alexander became completely familiar with the debts of Wines & Spirits. Evidence that Alexander visited and then for a short time worked in the store, however, does not support plaintiff's contention that Alexander was "fully familiar" with the business debts. Indeed, the very reason a closing had not yet occurred

was because Alexander needed full disclosure of the business debts.

On September 10, 1982, Alexander deposited $75,000 in escrow with George Goldberg. Apparently, this was done in return for McHenry's promise to let Alexander manage the store prior to the closing. On September 15, a closing was scheduled, but not consummated. Alexander feared that Wines & Spirits' outstanding liabilities might exceed those represented by McHenry in a memorandum of liabilities dated September 9, 1982.

Plaintiff argues that, at this point, though certain funds were kept in escrow, the deal was effectively closed. Plaintiff points to two events: (1) the landlord assigned the Wines & Spirits' lease to Rozzie Liquors and (2) the New York State Liquor Authority issued a liquor license to Rozzie Liquors, which is generally issued only to parties that have actually closed their deals (Berzow Aff. ¶ 30).

■ The Court disagrees with plaintiff's contention. A closing occurs when both parties have completely or substantially performed the terms of the contract of sale. The closing depends on the intent of the parties, not the view of a landlord or the State Liquor Authority. It is clear that the parties did not intend to close the deal until the seller made a full accounting of the business' debts to the buyer. That accounting not having been made, Alexander refused to close the deal.

On September 22, McHenry submitted a revised list of the corporation's outstanding debts and obligations. Some of these debts, however, were allegedly to be forgiven and others were attributable to McHenry personally, rather than his corporation. Plaintiff contends that Wines & Spirits' debts did not exceed its assets (Berzow Aff. ¶ 32). The parties, however, at least proceeded on the assumption that the corporation's liabilities exceeded its assets. The following week attorneys for both parties met with various creditors of Wines & Spirits in an effort to adjust payment terms so that the sale could be closed. The credi-

tors contacted, however, were unwilling to make any accommodations.

As a result, on September 23, 1982, Alexander demanded rescission of the contract based on McHenry's misrepresentation of corporate liabilities. McHenry was advised by counsel that he was in danger of liability for his perjured affidavit purporting to state Wines & Spirits' debts (Goldberg Dep. 154). As a result, McHenry agreed to rescind the contract.

The contract having been rescinded, Goldberg was prepared to return the $75,000 escrow deposit to Alexander. One of Wines & Spirits' secured creditors, however, advised Goldberg that only $6,000–$7,000 worth of inventory remained on the premises. This was substantially less than the $61,000 worth of liquor allegedly at the store on September 15 when McHenry had turned management of the store over to Alexander. Alexander admitted to secreting away a substantial amount of inventory (Alexander Dep. 74–77).

Shortly thereafter, creditors of Wines & Spirits filed an involuntary petition putting the business in bankruptcy. Several lawsuits were then commenced by the trustee and Alexander. These suits, together with an interpleader claim by Goldberg, were consolidated by stipulation in this action.

### Discussion

#### 1. *Trustee v. Goldberg*

■ Goldberg seeks to dismiss the trustee's action against him for breach of fiduciary duty. The trustee grounds his claim on his assertion that Goldberg "allowed McHenry to take control of $25,000 in corporate monies" (Berzow Aff. ¶ 20). Apparently, the trustee seeks to hold Goldberg liable for "allowing" Alexander to endorse the check representing the escrow funds to McHenry, as an individual, rather than to Wines & Spirits, the corporate entity. In so doing, the trustee contends that Goldberg breached his "paramount obligation to his corporate client, as well as its creditors" (Berzow Aff. ¶ 20).

Even if the Court assumes as true the facts urged by the trustee, the trustee has failed, as a matter of law, to present a claim of breach of fiduciary duty. In releasing the escrow funds, Goldberg did so at the direction of his client, McHenry—the sole shareholder, officer and director of Wines & Spirits—and the depositor of the escrow monies, Alexander—the sole shareholder, officer and director of Rozzie Liquors. The facts in dispute are not material to this claim. Whether Alexander was under duress only relates to McHenry's possible liability to Alexander. Whether Goldberg called Mr. Bloustein, Alexander's attorney, in the presence of Alexander and McHenry, as Goldberg and Bloustein assert contrary to Alexander's contentions, also relates only to duress. Whether Bloustein advised Alexander not to consent to the release as Bloustein asserts or, as Alexander testified, whether Bloustein simply told Alexander to follow Goldberg's directions, also goes to duress.

Goldberg released the escrow funds at the direction of his client and at least at the apparent direction of Alexander. Had Goldberg, under these circumstances, failed to release the escrow funds, he would have breached his fiduciary duty to the parties to the agreement. *See Van Amburgh v. Glavin,* 1 A.D.2d 913, 149 N.Y.S.2d 522, 523 (3d Dep't 1956) (per curiam). The trustee presents no evidence whatsoever that Goldberg even owed a fiduciary duty to Wines & Spirits' creditors. The trustee's bare allegation of its existence is insufficient. Absent the existence of such a duty, this Court cannot rule that Goldberg breached that duty. Accordingly, the trustee's claims against Goldberg are dismissed.

#### 2. *Trustee v. Alexander*

■ The trustee is attempting to collect $261,000 from Alexander under the terms of the May 12, 1982 agreement. Underlying this claim is the trustee's reliance on § 365 of the Bankruptcy Act, which allows a trustee to assume an executory contract of the debtor. The term "executory contract," within the meaning of the Bankruptcy Act, encompasses "contracts on

which performance remains due to some extent on both sides." *In re Tonry*, 724 F.2d 467, 468 (5th Cir.1984) (citing S.Rep. No. 989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code, Cong. & Ad.News 5787, 5844). Therefore, an executory contract validly terminated prior to the filing of a bankruptcy petition cannot be resurrected by the filing of the petition. *See Bank of Marin v. England*, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *In re Triangle Labs. Inc.*, 663 F.2d 463, 467–68 (3d Cir.1981).

The trustee maintains that occurrence of rescission is a material fact in dispute. The Court disagrees. The May 12th contract was rescinded by the parties on September 23rd.

The trustee asserts first that Alexander is estopped from pleading a misrepresentation based on McHenry's misstatement of Wines & Spirits' debts. The trustee contends that Alexander, after working in and, for a short time, managing the store, was fully familiar with the business' debts.[1] Thus, the trustee's argument concludes, Alexander had no legitimate basis for demanding rescission. Secondly, the trustee argues that the business' assets outstripped its liabilities in any event. Thus, again, the trustee urges there was no justification for this rescission.

■ These issues of fact, to the extent they actually exist, are not material. Their materiality presupposes that the parties needed some type of justification to support their decision to rescind. Justification, such as misrepresentation, is only necessary when one party is trying to escape its contractual obligations or, for example, when two parties wish to rescind to the detriment of a third party beneficiary. There is no evidence Wines & Spirits' creditors have any rights under the contract for the sale of the business. If two parties agree to rescind an executory contract, they need no legal justification.[2] The surrender of rights under the original agreement by each party is the consideration for the mutual agreement of rescission. Calamari & Perillo, Contracts § 21–2, at 757 (2d ed. 1972).

■ The trustee apparently argues that because rescission could have been detrimental to the interests of Wines & Spirits' creditors, Alexander and McHenry needed some legal justification for abrogating the contract. This argument is flawed because any creditor could be prejudiced by any agreement entered into by a business owing it money. Thus, under the trustee's theory, any contract or rescission of a contract by that business would demand "legal justification." The Court declines to accept such an argument. A business is run by its officers, directors and shareholders, not its creditors. Absent some contractual right, this Court will not bestow such powers on a business' creditors.

■ The trustee raises two other arguments that likewise are without merit. The trustee contends that rescission was ineffective because Goldberg had no authority to rescind. Although the trustee concedes that Goldberg was Wines & Spirits' attorney, the trustee maintains that Goldberg cannot prove his agency—necessary for him to rescind on behalf of the company— by his own declaration. Goldberg, however, never claimed to have the authority to rescind the contract. It was McHenry himself who, upon Goldberg's advice, expressly rescinded the contract.

■ There is no evidence that the rescission was in writing and the trustee contends that since the contract to sell the business was within the statute of frauds, thus requiring a writing, any rescission agreement would also have to be in writing

---

**1.** The trustee's contention that Alexander knew the precise amount of the business' debts is pure speculation by a lawyer lacking personal knowledge. The deposition of Alexander fails to support this contention.

**2.** Even when a party claims to rescind without legal right, if the other party fails to object to this termination, the law will give effect to the rescission. *Kane Realty Co. v. National Children's Store's, Inc.*, 169 Misc. 699, 8 N.Y.S.2d 505, 508 (Mun.Ct.1938).

to be effective. In New York, however, an oral agreement to modify or rescind a written contract within the statute of frauds will be enforced. *See Imperator Realty v. Tull,* 228 N.Y. 447, 127 N.E. 263 (N.Y. 1920). The trustee is estopped from taking advantage of the fact that McHenry and Alexander did not comply with the statute of frauds because Alexander clearly relied on McHenry's agreement to rescind. Indeed, Alexander discontinued his association with the liquor business in question and another liquor store is in business at that location today.[3] To hold Alexander to the rescinded agreement would foist McHenry's debts on him without legal or equitable justification.

■■■■ The trustee also argues that rescission is ineffective because the parties failed to resort to Article Six of the Uniform Commercial Code which governs bulk sales of businesses. Article Six was designed to give transferor's creditors a reasonable chance to collect their debts when their debtor proposes to transfer its business. *See* White & Summers, Uniform Commercial Code §§ 19–1, at 754–55; 19–7, at 778–80 (2d ed. 1980). Non-compliance with the requirements of Article Six renders the sale ineffective as to the creditors of the transferor. *See Adrian Tabin Corp. v. Climax Boutique, Inc.,* 34 N.Y.2d 210, 356 N.Y.S.2d 606, 608, 313 N.E.2d 66, 67 (1974). In this case, the creditors are seeking to employ Article Six as a sword, rather than a shield, to abrogate a non-sale. In effect, the creditors are seeking to satisfy McHenry's debts with Alexander's assets.[4] There is no evidence that Article Six was intended to lead to such an unfair result.

3. The parties' post-rescission conduct corroborates their intention to rescind. Indeed, the trustee, who seeks to bind Alexander to the contract of sale, has sold the store, its inventory and fixtures to another party. In light of this sale, it strains credulity to assert that the May 12, 1982 contract is still executory.

4. It is interesting to note that many of these same creditors erected obstacles to consummation of the sale by refusing to adjust payment schedules after Alexander realized the true extent of Wines & Spirits' outstanding debts.

■■ Having found that the September 23rd rescission was effective, the Court rules that the May 12th agreement was no longer executory when the bankruptcy petition was filed. As a result, the agreement is not assumable by the trustee under § 365 of the Bankruptcy Act.

### 3. *Alexander v. Goldberg*

■■ Prima facie, Alexander makes a plausible argument that he consented to the release of the $25,000 in escrow under duress. He claims that he was under pressure: his girlfriend was going through a divorce, he was trying to sell his taxi medallion and familiarize himself with his new business. Further, Alexander testified that Goldberg threatened to void the contract through use of legal technicalities unless Alexander consented to the release of the $25,000 escrow deposit. Alexander also complains that his own attorney, Bloustein, offered his client no guidance except to suggest following Goldberg's advice.[5] Alexander maintains that all parties and their counsel knew of these pressures and took advantage of him. Assuming the truth of these allegations, the Court doubts Alexander has stated a claim of duress. The fact of his girlfriend's divorce, the pressures of wrapping up an old business and starting a new one cannot possibly immunize a businessman from being held to his contractual promises. Certainly Goldberg is not responsible for creating Alexander's problems.

■■ Alexander does allege that Goldberg's threat to use legal technicalities to void the contract of sale put him under

5. The Court notes that Alexander's version is contradicted by the affidavits of Goldberg and Bloustein. If Alexander's version is true, it is hard to believe that four months later Alexander would give Goldberg $75,000 more to put in escrow. But, obviously, the Court does not make factual findings in a summary judgment motion. All doubts must be resolved in favor of Alexander, who is opposing Goldberg's cross-motion for summary judgment on this issue.

duress. In a case of this type, where no irreparable injury would have resulted from avoidance of the contract, even a threat to breach a contract does not constitute duress. Calamari & Perillo, *supra*, § 9–6, at 270. Surely, Goldberg's alleged threat to use lawful means to void the contract cannot constitute duress.

■ In any event, the release was an agreement between Alexander and McHenry, not Goldberg. Even if Alexander succeeded in voiding the agreement on grounds of duress, he could look only to McHenry or Wines & Spirits for damages, not to their attorney. *Id.* § 9–2, at 263. Alexander is suing the wrong person. As stated above, when directed by McHenry and Alexander to release the $25,000 escrow deposit, Goldberg was legally compelled to do so. The Court cannot fairly hold Goldberg liable for releasing the funds when his failure to do so would have entailed legal liability.

Accordingly, Goldberg's motion for summary judgment in his favor against Alexander's claims to the $25,000 escrow deposit is granted.

### 4. *Goldberg and the $75,000 Escrow Deposit*

■ Goldberg seeks to deposit the $75,000 escrow deposit, together with interest, with the Clerk of the Court and recover his attorney's fees expended in its defense. Indeed, the general rule is:

> A disinterested and innocent stakeholder, who has been required to expend time and money to participate in a dispute not of his own making and the outcome of which has no impact on him, is entitled to costs and attorney's fees.

*Sparta Florida Music Group, Ltd. v. Chrysalis Records, Inc.*, 566 F.Supp. 321, 322 (S.D.N.Y.1983). As regards his defense of the $75,000 stakehold, Goldberg does merit the award of attorneys fees and costs. Most of Goldberg's costs and fees in this action, however, pertain to his liability *vis a vis* the release of the $25,000 escrow deposit. His defense in that regard cannot be termed that of a disinterested and innocent stakeholder. Goldberg was not defending a stakehold, he was primarily defending himself. His claims for fees and costs in this regard might be available against the bankruptcy estate of McHenry and Wines & Spirits, but should not be deducted from the $75,000 escrow deposit.

Accordingly, Goldberg's request to deposit the $75,000 escrow deposit and interest with the Clerk of this Court, pursuant to Rule 67, is granted. Goldberg's counsel may submit affidavits detailing costs and fees for the work done in this action. These should specify exactly what time and costs are attributable to counsel's work done in defense of the $75,000 stakehold, as distinguished from the majority of work which pertained to Goldberg's involvement in the release of the $25,000 escrow deposit. Should the Court deem it just, those costs and fees expended in defense of the $75,000 stakehold may be deducted from the monies deposited with the Clerk of this Court and paid to Goldberg.

### 5. *Disputes to be Resolved*

■ The only issue remaining in this action is to determine the relative rights of Alexander and the trustee in the funds Goldberg will deposit with the Court. Having decided the contract was rescinded, it appears that the funds belong to Alexander. But the trustee has the right to recover the value of the inventory Alexander has admitted to removing from Wines & Spirits and any profits Alexander may have gained during his brief management of the store during September, 1982.

### Conclusion

The claims directed by the trustee, on behalf of Wines & Spirits' creditors, against Alexander and Goldberg were in fact claims more properly made against McHenry. Alexander cannot be held liable on a contract that he and McHenry rescinded prior to the filing of the bankruptcy petition. Likewise, Goldberg cannot be held liable for releasing the $25,000 escrow deposit when both McHenry and Alexander directed him to do so. It is McHenry who owes his creditors; McHenry's debts were

not somehow assumed by Alexander or Goldberg.

Alexander's claim against Goldberg for the $25,000 allegedly released from escrow under duress is also a claim more properly made against McHenry. McHenry walked away with Alexander's funds, therefore, Alexander must look to McHenry to recover money lost on an agreement allegedly made under duress.

Even Goldberg's claim for attorney's fees and costs expended in defense of his role in the release of the $25,000 escrow deposit is more properly directed to McHenry. The Court cannot allow the parties to create surrogate debtors simply because the real debtor—McHenry—is unavailable.

Accordingly, the motion by Alexander and Rozzie Liquors and the cross-motion by Goldberg, both for summary judgment dismissing the claims of the trustee, and Goldberg's cross-motion for summary judgment dismissing Alexander's claims are granted.

Goldberg's request to deposit the $75,000 escrow fund, plus interest, with the Clerk of the Court is granted. Upon the submission of affidavits detailing costs and fees expended in this action, with specification of which costs and fees relate only to defense of the $75,000 stakehold, the Court will determine whether it is appropriate to award Goldberg his costs and fees relating to defense of the stakehold. Any award to Goldberg for expenses will be deducted from the monies deposited with the Court.

The parties remaining in this action are directed to appear before this Court on Thursday, January 17, 1985 at 10:00 a.m. for a pre-trial conference to be held in Courtroom 35 of the United States Courthouse in the City of New York.

SO ORDERED.