**GEORGE A. FULLER COMPANY, Plaintiff,**

v.

**ALEXANDER & REED, ESQS., Defendants.**

No. 88 Civ. 0406 (IBC).

United States District Court, S.D. New York.

April 1, 1991.

---

Haythe & Curley, New York City (Leonard S. Baum, Dean T. Cho, of counsel), for plaintiff George A. Fuller Co.

Alexander & Reed (Michael J. Alexander, Richard W. Reed, of counsel), pro se.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff George A. Fuller Company ("Fuller") commenced this action on Janu-

ary 21, 1988 to recover $300,000 which it alleges was improperly released from escrow by escrow agents, defendants Alexander & Reed, Esqs. ("Alexander & Reed"). Fuller claims that Alexander & Reed breached the escrow agreement and their fiduciary duty by releasing escrow funds prior to the closing of certain real property and prior to Alexander & Reed holding a recordable deed of trust with respect to that property in favor of Fuller.

Alexander & Reed deny Fuller's allegations. They contend that Fuller abandoned the escrow agreement either by instructing them to act contrary thereto or by ratifying the acts Alexander & Reed took in contravention of the written escrow agreement. Thus Alexander & Reed deny that any of their acts damaged Fuller.

The action was tried before this Court on June 4, 1990. In addition to presenting in their post-trial papers the facts and law supportive of their respective positions, Alexander & Reed moved, at our direction, to amend the pleadings to conform to the evidence admitted at trial pursuant to Federal Rule of Civil Procedure 15(b). We base our disposition of the motion and the substantive claims of this action on the findings of fact and conclusions of law discussed hereunder.

## FINDINGS OF FACT

Prior to March 13, 1986, Fuller agreed to loan $300,000 to real estate developer Clinton E. Hutchcraft (not a party in the instant action). The loan was made to pay certain closing costs and expenses incident to the purchase of properties in Tennessee which were to be developed into apartment complexes by WildHorse Associates, Ltd. ("WildHorse") and SilkRock Associates, Ltd. ("SilkRock") for which Fuller was to be construction manager or general contractor. (Tr. 23)[1] WildHorse and SilkRock were two of thirteen limited partnerships that were created for the purpose of developing various apartment projects; Hutchcraft was general partner and had employed Alexander & Reed as counsel. In addition, defendant Alexander held a

20% limited partnership interest in the two aforementioned partnerships. (Tr. 30–31)

On March 13, 1986, Hutchcraft went to New York with defendant Alexander to secure the loan from Fuller. While in New York, Hutchcraft signed a promissory note on behalf of the partnerships and personal guarantees and then received the $300,000. (Tr. 24) Later that day, Fuller brought up the subject of an escrow agreement, which Fuller's attorneys, Haythe & Curley, Esqs., subsequently prepared. (Tr. 24–25)

The escrow agreement, signed by Fuller, Hutchcraft on behalf of WildHorse and SilkRock, and defendant Alexander on behalf of Alexander & Reed, provided in pertinent part:

> The Escrow Agent [Alexander & Reed] is hereby authorized and directed to hold funds represented by the certified check (the "Funds") in escrow pending the closing (the "Closing") on or about March 14, 1986 of the acquisition by WildHorse ... and SilkRock ... of those certain properties (the "Property") located in Nashville, Tennessee contemplated to be developed by WildHorse and SilkRock by the construction of apartment complexes. The Escrow Agent is hereby authorized to release the Funds to the designees of WildHorse and SilkRock at the Closing in payment of certain related costs and expenses; provided however, that the Escrow Agent's authority to disburse the Funds shall be subject to its holding a deed of trust with respect to the Property in favor of Fuller ... in recordable form.
>
> \*   \*   \*   \*   \*   \*
>
> Upon the release of the funds from escrow, the Escrow Agent agrees forthwith to cause the deed of trust to be recorded with the appropriate state and local authorities in Tennessee no later than 24 hours after the Closing.
>
> \*   \*   \*   \*   \*   \*
>
> In the event that the Closing shall not occur as contemplated herein on or before March 31, 1986, the Escrow Agent

---

1. The letters "Tr." followed by a number indicate pages of the official trial transcript.

agrees to deliver the certified check ... to Fuller no later than 10:00 a.m. on April 2, 1986. (Ex. 1)[2]

In addition, the following handwritten terms were added to the agreement and initialled by Fuller's president, Mr. Mango:

Both parties agree that said funds may be released upon the closing of the land purchase by SilkRock and that the Escrow Agent shall record a second trust deed on the land purchased by SilkRock. (*Id.*)

Finally, a deed of trust and security agreement were attached to the escrow agreement.

After the escrow agreement was executed by the parties Hutchcraft returned the $300,000 to Fuller and Fuller gave to Alexander & Reed, pursuant to the terms of the escrow agreement, a certified check for $300,000 which defendant Alexander deposited in a special escrow account at American National Bank. (S.F. 1; Tr. 43)[3]

According to the testimony of Hutchcraft, on March 24, 1986, Hutchcraft called Mr. Mango and asked if the terms of the escrow agreement could be adjusted. (Tr. 25) At Hutchcraft's request, Fuller unconditionally authorized Alexander & Reed to release $50,000 from the escrow account to Hutchcraft, SilkRock, and WildHorse and accordingly sent written instructions to Alexander & Reed. (S.F. 6; Tr. 25–26; *see* Ex. 2)

On April 14, 1986, Hutchcraft informed Mr. Mango and Fuller's vice president and general counsel, Mr. Donelan, that the SilkRock property had closed in escrow in California. (Tr. 27, 34, 46; *see* S.F. 7, Ex. 3) The next day, Mr. Donelan spoke with defendant Alexander, who confirmed this information based on what he had heard from Hutchcraft. (Tr. 35, 46; *see* S.F. 7)

Apparently concerned about properly executing his fiduciary as escrow agent, Alexander testified that he informed Mr. Donelan in their telephone conversation that he did not understand how closing in escrow in California worked, but was reassured by the latter that Fuller did business all over the United States, including California, and they knew how it worked. (Tr. 48) In contrast, Mr. Donelan testified before us that he was not familiar with real estate closings in California. (Tr. 38) Nonetheless, on behalf of Fuller, he authorized the release from escrow of the remaining $250,000 and accordingly sent written instructions to Alexander & Reed. (Tr. 45, 48–49; Ex. 3; *see* Ex. 4)

Mr. Donelan's letter to defendant Alexander, however, specifically conditioned the release of the escrow funds:

Per your verbal advise [sic] ... that SilkRock ... closed in escrow in California, you are hereby authorized to release the Funds *in accordance with the terms of the referenced Escrow Agreement* and proceed to record the Deed of Trust in accordance with the terms of said Escrow Agreement. (Ex. 3) (emphasis ours)

The condition referred to was that Alexander & Reed hold a recordable deed of trust on the property in favor of Fuller.

Alexander acknowledged receipt of Mr. Donelan's letter with a return letter, wherein he clarified the point that "the Deed of Trust [would] not be recorded for several days until the First Deed of Trust to Lender had been recorded out of Escrow." (Ex. 4) The change was noted by Donelan because "on or about April 15, 1986, the parties formally waived the original April 2, 1986 termination date of the Escrow Agreement and agreed that Alexander & Reed would not record the deed of trust in favor of Fuller on the SilkRock property for several days after the closing, rather than within 24 hours of the closing as originally agreed upon." (S.F. 8; Tr. 35–37; *see* Ex. 3, 4)

Alexander & Reed then disbursed the remaining $250,000 from the escrow account pursuant to Fuller's authorization and Hutchcraft's instructions. (S.F. 9; Tr. 26–27, 48–49) At no time did Hutchcraft or

**2.** The letters "Ex." followed by a number indicate exhibits received in evidence at trial.

**3.** The letters "S.F." followed by a number indicate references to the stipulated facts contained in the parties' joint pre-trial order.

SilkRock take title to the land. (Tr. 50) In addition, "Alexander & Reed [never held] a recordable deed of trust in favor of Fuller on the SilkRock property, as provided in the Escrow Agreement, when it released the funds from escrow." (S.F. 10) Consequently, "Alexander & Reed failed to record a deed of trust in favor of Fuller on the SilkRock property within several days of the closing of the SilkRock property." (S.F. 11)

Presently, "Hutchcraft, SilkRock and WildHorse have not repaid any part of the $300,000 to Fuller." (S.F. 12) In addition, Alexander & Reed has neither delivered a certified copy of the deed of trust in favor of Fuller, with evidence of recording, nor repaid the $300,000. (S.F. 13)

## DISCUSSION

### I. *Motion to Conform the Pleadings*

Before addressing the substantive claims in this action, we address Alexander & Reed's motion to conform the pleadings to the evidence introduced at trial. For the reasons stated below, we are compelled to deny the motion.

Alexander & Reed move to amend the pleadings pursuant to Fed.R.Civ.P. 15(b) to include the defense of lack of consideration. They claim that this defense is supported by undisputed evidence presented on the issue at trial without objection by Fuller. Fuller opposes the motion.

According to Fed.R.Civ.P. 8(c), failure of consideration is an affirmative defense that must be set forth in the pleadings. If a party fails to raise an affirmative defense in its pleadings, that defense is deemed to have been waived. *Dobbs v. Vornado, Inc.*, 576 F.Supp. 1072, 1080–81 (E.D.N.Y.1983). However,

[e]ven as late as trial, if evidence related to an unpleaded defense is introduced without objection, Rule 15(b) requires the pleadings to be treated as if they actually had raised the issue. However, if the record indicates that the unpleaded affirmative defense has not been tried by the "express or implied consent" of the parties, the pleadings will not be treated

as if they actually had raised the defense, and the court may decide not to permit the issue to be litigated. However, Rule 15(b) does give the trial court discretion to permit the amendment of the pleadings over objection when it will promote the presentation of the merits of the action, the adverse party will not be prejudiced by the sudden assertion of the defense, and will have ample opportunity to meet the issue.

5 Wright & Miller, *Federal Practice & Procedure*, § 1278, at 495–502 (cites omitted); *see Cramer v. Hoffman*, 390 F.2d 19, 22 (2d Cir.1968). Courts look at whether "plaintiff knew of the issue and in a limited sense [consented to trial of the issue] by implication." *Mason v. Hunter*, 534 F.2d 822, 825 (8th Cir.1976); *accord Hillburn by Hillburn v. Maher*, 795 F.2d 252, 264 (2d Cir.1986).

As Alexander & Reed claim, Hutchcraft testified that Fuller had already agreed to loan him the funds and that he had signed a promissory note and personal guarantees. (*See* Tr. 23–24) Hutchcraft also testified that an escrow agreement was only discussed once he was in New York and after he had received the money. (*See* Tr. 24) Alexander & Reed further contend that Fuller did not object to this testimony and therefore implicitly consented to try the issue of lack of consideration. Although this undisputed evidence may have been presented at trial, "the introduction of evidence relevant to an issue *already* in the case may not be used to show consent to the trial of a new issue absent a *clear indication* that the party introducing the evidence is attempting to raise a new issue." *Int'l Harvester Credit Corp. v. East Coast Truck*, 547 F.2d 888, 890 (5th Cir.1977) (emphasis ours); *accord Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977).

In the instant case, the facts support a finding that Fuller neither expressly nor impliedly consented to try the issue of whether there was lack of consideration when the parties executed the escrow agreement. Hutchcraft's testimony does

not serve as undisputed evidence on the specific issue of lack of consideration. His testimony was clearly solicited to relate background information; it describes the events which initially inspired the creation of the escrow agreement. (See Tr. 23–25) Alexander & Reed made no clear indication that Hutchcraft's testimony was being elicited in an attempt to raise a new issue. Therefore, we find that there was no reason for Fuller to believe that the defense of lack of consideration was ever at issue, and, under the circumstances, to allow the pleadings to be amended to include that defense would unduly prejudice Fuller. We thus deny the motion of Alexander & Reed.

## II. The Substantive Claims

This case concerns an escrow agent's liability when it releases escrow funds before the conditions of release have been satisfied. The primary issues presented are whether a valid escrow agreement existed between the parties, whether an escrow agent has a duty to comply strictly with the terms and conditions of the escrow agreement, and whether the parties at any time abandoned the escrow agreement, thus releasing the agent from its fiduciary duties.

■ Under New York law, for an instrument to act as a valid escrow agreement it must contain (a) an agreement as to the subject matter and delivery of the instrument; (b) a third party depositary; (c) delivery of the instrument to a third party conditioned upon the performance of some act on the happening of some event; and (d) relinquishment by the grantor. Press v. Marvalan Indus. Inc., 422 F.Supp. 346, 349 (S.D.N.Y.1976); Farago v. Burke, 262 N.Y. 229, 233, 186 N.E. 683, 684 (1933); Menkis v. Whitestone Savings and Loan Assoc., 78 Misc.2d 329, 330–1, 356 N.Y.S.2d 485, 487–8 (Dist.Ct., Nassau Co. 1974); 55 N.Y.Jur.2d Escrows § 3 (1986). The facts adduced at trial indicate that the requisite elements existed. The parties executed a rather detailed escrow agreement which set forth, inter alia, the names of the parties, the amount deposited, the name of the third party depositary or escrow agent, the parties to receive the funds and the conditions to be met before releasing the funds. (Ex. 1) Additionally, Fuller delivered the instrument to Alexander & Reed and relinquished control of the $300,000. (See Tr. 43) Therefore we have no hesitancy in finding that there was a valid escrow agreement between the parties as of March 13, 1986.

Next, we must consider the duty of Alexander & Reed as escrow agents under the escrow agreement. Fuller argues that because a valid escrow agreement was created, Alexander & Reed breached their fiduciary duties as escrow agent when they released the escrow funds before the conditions of escrow were fulfilled and are thus liable for the $300,000. Alexander & Reed, however, argue that although there was a valid escrow agreement, Fuller abandoned it and thereby rendered the agreement ineffectual for any purpose.

■ New York law makes the depositary a trustee for both parties. Farago v. Burke, supra, 262 N.Y. at 233, 186 N.E. at 684; Mechanics' Nat'l Bank v. Roughead, 76 A.D. 534, 545, 78 N.Y.S. 800, 808 (4th Dep't.1902), aff'd sub nom. Mechanics' Nat'l Bank v. Jones, 175 N.Y. 518, 67 N.E. 1085 (1903); 55 N.Y.Jur.2d Escrows § 16 (1986). Specifically, the law regards the escrow relationship as a fiduciary one. Bardach v. Chain Bakers, 265 A.D. 24, 27, 37 N.Y.S.2d 584, 587 (1st Dep't.1942), aff'd, 290 N.Y. 813, 50 N.E.2d 233 (1943); Animalfeeds Int'l, Inc. v. Banco Espirito Santo E Comercial De Lisboa, 101 Misc.2d 379, 383, 420 N.Y.S.2d 954, 957 (Sup.Ct., Sp.T., N.Y. Co.1979). Consequently, "upon acceptance of the agreement, [the escrow agent] has the duty of strict execution of its terms and conditions." 55 N.Y. Jur.2d Escrows § 19 (1986); see Farago v. Burke, supra, 262 N.Y. at 233, 186 N.E. at 684; Schuman v. Conforti, 41 A.D.2d 661, 662, 340 N.Y.S.2d 686, 687 (2d Dep't.1973). In particular, "an escrow agent ... is charged with the duty not to deliver the escrow deposit to anyone except upon strict compliance with the conditions imposed...." 55 N.Y.Jur.2d Escrows § 21 (1986); see Fara-

*go v. Burke, supra,* 262 N.Y. at 233, 186 N.E. at 684–5; *Grinblat v. Taubenblat,* 107 A.D.2d 735, 736, 484 N.Y.S.2d 96, 97 (2d Dep't.1985). Thus, Alexander & Reed would be liable and subject to damages for a wrongful delivery, *see, e.g., Grinblat v. Taubenblat, supra* at 736, 484 N.Y.S.2d at 97, unless the escrow agreement had been abandoned. *See Kosinski v. Gallt,* 58 Misc.2d 124, 126, 294 N.Y.S.2d 602, 605 (Sup.Ct., Nassau Co.1968).

■ An escrow agreement "may be mutually abandoned by the parties to it, and ... abandonment need not be marked with formality equal to that used in establishing the escrow." *Matter of Ellison Associates,* 13 B.R. 661, 669 (Bkrtcy.S.D.N.Y. 1981), *aff'd, In re Ellison Associates,* 63 B.R. 756 (S.D.N.Y.1983). In fact, "conduct inconsistent with the escrow is sufficient for the court to conclude it abandoned." *Id.* Thus, even if the parties do not expressly agree to waive the escrow conditions or abandon the agreement, the court may consider whether the facts sustain such an implication. *See id.;* 55 N.Y. Jur.2d *Escrows* § 7 (1986).

■ Based on the facts of the instant case, we find that Fuller acted in a manner inconsistent with the terms of the escrow agreement and thereby abandoned it. Fuller's first inconsistent act was its unconditional authorization of the release of $50,-000 from the escrow funds which occurred on March 24, 1986. Fuller neither conditioned the release of the funds upon the recording of the deed of trust nor did it mention the escrow agreement in the authorization letter in any way other than by a passing reference that alluded to what funds were being discussed. (*See* Ex. 2) Moreover, Fuller did not expressly advise Alexander & Reed that the escrow agreement was to be modified to include an agreement concerning the early release of the $50,000.

Next, the correspondence and discussions between the parties and their individual testimony before us at trial further reveal Fuller's abandonment of the escrow agreement. The facts indicate that Fuller assumed, based on information supplied by Hutchcraft, that there actually had been or would be a "closing" on the SilkRock property and thus authorized the release of the remaining $250,000. (*See* Tr. 46–48) Fuller, however, never confirmed such assumptions. Alexander & Reed even warned that they did not understand what had occurred when the property had "closed in escrow" (Tr. 48) and sent a letter to Fuller wherein they explained that "the Deed of Trust [would] not be recorded for several days *until the first Deed of Trust to Lender* had been recorded out of Escrow." (Ex. 4) (emphasis ours) This confusion should have put Fuller on notice that the primary deed of trust in favor of the lender had yet to be recorded and that there was perhaps a question as to whether the loan, and the passing of title, had ever occurred.

Despite this discrepancy, and despite the fact that Alexander & Reed could not comply with the terms of the escrow agreement, Fuller did not revoke its authorization to release the remaining $250,000. Additionally, Fuller acted inconsistently by allowing the March 31, 1986 termination date for the escrow agreement to pass without a word. Fuller's final inconsistent act consisted of waiting until December 23, 1987, more than one and a half years after the termination date provided for in the escrow agreement, before inquiring of Alexander & Reed as to the whereabouts of the funds or the status of the deed of trust. Consequently, Fuller abandoned the escrow agreement and waived strict compliance with its terms by acting inconsistently therewith. *Matter of Ellison, supra; Kosinski v. Gallt, supra.*

Alexander & Reed released the funds from the escrow account according to Fuller's instructions; they therefore did not breach their fiduciary duty. *See In re 2903 Wines & Spirits, Inc.,* 45 B.R. 1003 (S.D.N.Y.1984). Further, even if Alexander & Reed acted inconsistently with the terms of the escrow agreement, Fuller ratified those acts by specifically instructing them to disburse the funds in contravention of the escrow agreement. *See Kosinski v. Gallt, supra.* In the final analysis, Fuller acted as if the escrow agreement did not exist; therefore, it cannot now hold Alexander &

388

Reed to account for not strictly complying with the terms therein.

The law of escrows in New York, as discussed above, mandates that the parties to an escrow agreement comply strictly with the terms and conditions thereof if they seek to enforce the agreement. *See, e.g., Kosinski v. Gallt, supra.* The law imposes a lower standard, however, when considering whether an escrow agreement has been abandoned. *See, e.g., Matter of Ellison, supra.* Fuller's aforementioned acts were clearly inconsistent with the formal conditions of the escrow agreement. Hence, these facts, in conjunction with the spirit of the law of escrows in New York, compel our finding that Fuller abandoned its escrow agreement with Alexander & Reed.

### CONCLUSION

Based on the facts discussed hereinabove and the law applicable thereto, we are constrained to, and do, deny Alexander & Reed's motion to conform the pleadings pursuant to Fed.R.Civ.P. 15(b). On the merits, we find in favor of defendants Alexander & Reed and against plaintiff Fuller on the ground that Fuller abandoned the escrow agreement by acting inconsistently with the terms contained therein; thus Alexander & Reed are not liable for the early release of the $300,000 from escrow.

SO ORDERED.